**PIMENTEL LAW, P.C.**
Gabriel J. Pimentel, Esq. (SBN 265328)
GJP@PimentelLaw.com
Bruce T. Murray, Esq. (SBN 306504)
BTM@PimentelLaw.com
30 N. Raymond Avenue, Suite 210
Pasadena, CA 91103
Telephone: (626) 765-6505
Fax: (626) 628-3041

Attorneys for Plaintiff and Putative Class,
NANA AKUA SERWAAH ODDEI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NANA AKUA SERWAAH ODDEI, an individual, on behalf of all others similarly situated,

Plaintiff,

vs.

OPTUM, INC., DAVITA MEDICAL GROUP CALIFORNIA, P.C., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., SCANSTAT TECHNOLOGIES, LLC, and DOES 1-20 inclusive,

Defendants.

Case No. 2-21-cv-03974

**PLAINTIFF'S REPLY TO DEFENDANT OPTUM, INC'S OPPOSITION TO PLAINTIFF'S MOTION TO REMAND; DECLARATION OF BRUCE T. MURRAY**

Date: July 9, 2021
Time: 8:30 a.m.
Courtroom: 6C
Judge: Hon. Stanley Blumenfeld, Jr.

Removal filed: May 11, 2021

Action Filed: March 22, 2021
Trial Date: None set

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

Defendant's Opposition to Plaintiff's Motion to Remand is a combination of misrepresentations of law, misrepresentations of facts and fuzzy math. As for its bottom-line total, before Defendant plays fuzzy with the math, it plays hopscotch around the legal standards – most often quoting the legal standard for an initial notice of removal, rather than the standard required to oppose a motion to remand, which is an entirely different standard. But Defendant pulls out whatever standard conveniently suits its fancy – an easy standard for themselves, and a stringent standard for Plaintiff. The switching may seem initially dizzying, but then it becomes comedic in its obviousness – like a magic trick gone bad.

The very first line of Defendant's Opposition states, "Plaintiff's Motion to Remand fails to present a single piece of evidentiary proof calling into question Optum's demonstration in its Notice of Removal that the amount in controversy in this case exceeds $5 million." In fact, and by law, it is the removing party who has the burden of showing the amount in controversy is over $5 million. Defendant's second sentence reads, "Instead, Plaintiff's arguments against CAFA jurisdiction attack the reliability of her own pleading." In fact, Plaintiff never pleaded a specific amount of damages in her pleading; Plaintiff's Prayer for Relief only pleads for "monetary damages and all other relief the Court deems appropriate, costs and attorneys' fees in excess of $25,000." Plaintiff only pleaded the amount necessary to establish her case above limited jurisdiction. Cal. Code Civ. Proc § 86. Then, the second paragraph in Defendant's Opposition states, "In her Motion to Remand, Plaintiff misconstrues the burden on removal. Under *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014), a defendant need only plausibly allege that the amount in controversy is met." In fact, *Dart* sets the standard for a notice of removal, not the standard for a remand, once a party has challenged a removal. Defendant switches the standard throughout its Opposition.

Then comes the fuzzy math and concocted numbers. In its Opposition, Defendant never identifies the size of the class, and then it states a grossly inflated amount of damages for each overcharged records request. The numbers presented in its Opposition memorandum are not even supported by the numbers supplied in their own supplied "evidence," which is simply a Declaration by a manager for Health Information Systems for Optum, Inc. The Declaration states the number of requests Optum received, but it does not provide the number of pages they requested or the amounts charged. To complete any of the Manager's numbers in the Declaration, if one were to apply the same amount charged to Plaintiff as pled in the Complaint, the resulting numbers would nevertheless fall far short of the amount-in-controversy requirement.

To get to a bottom line, using both the numbers provided in the Manager's Declaration and the figures presented Plaintiff's Complaint, the total maximum amount overcharged for the retrieval and copying of records, within the four-year covered by the Complaint, is $2,094.75 – far below the amount-in-controversy requirement for federal jurisdiction in a case under the Class Action Fairness Act (CAFA). These mathematical details, along with the applicable standards of law, and the actual facts, will be analyzed as below.

## II. FACTS

Plaintiff alleges in her Complaint that all Defendants – including Optum, Inc. – violated California Evidence Code § 1158 and California Business & Professions Code §§ 17200, et seq. (Unfair Competition Law) by virtue of charging members of the public .25¢ per page for copying of medical records when state law caps the cost at .10¢ per page. The UCL claim is derivative of the Evidence Code § 1158 claim. The Complaint further alleges that Scan Stat Technologies, LLC violated the California Confidentiality of Medical Information Act (CMIA), California Civil Code §§ 56, et seq. by engaging in the unauthorized disclosure of class members' confidential medical information, which gives rise to $1,000 in statutory damages per violation.

On March 22, 2021, Plaintiff filed her original complaint in the Los Angeles

Superior Court. On May 11, 2021, Optum, Inc. filed its Notice of Removal. It is important to note here that only Optum Inc. has appeared in this case. As is reported in the parties' Joint Report Pursuant to Federal Rule of Civil Procedure 26(f), Defendant ScanSTAT Technologies, LLC has not yet entered an appearance in this action. This fact is significant; because at various points in their Opposition and purported "evidence," this Defendant assumes evidence that would be attributable to ScanSTAT and makes statements on behalf of ScanSTAT. Such assumptions cannot be considered as evidence for the purposes of Optum's Opposition to Plaintiff's Motion to Remand.

## III. ARGUMENT

### a. Removing Party Bears Burden of Proving That Removal Is Proper

At various points in its Opposition, Defendant attempts to shift the burden from itself to Plaintiff as the party responsible for proving that removal is proper, when in fact the burden belongs to Defendant:

"In cases removed from state court, the removing defendant has 'always' borne the burden of establishing federal jurisdiction, including any applicable amount in controversy requirement. *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992). Where the complaint does not specify the amount of damages sought, the removing defendant must prove by a preponderance of the evidence that the amount in controversy requirement has been met. *Id.* at 566-67; *Sanchez v. Monumental Life Ins. Co.,*102 F.3d 398, 404 (9th Cir. 1996) ('Under this burden, the defendant must provide evidence that it is `more likely than not' that the amount in controversy' satisfies the federal diversity jurisdictional amount requirement.) *Abrego Abrego v. the Dow Chemical Co.*, 443 F.3d 676, 682-83 (9th Cir. 2006).

The burden does not change under the CAFA. "Under CAFA the burden of establishing removal jurisdiction remains, as before, on the proponent of federal jurisdiction." *Lowdermilk v. U.S. Bank*, 479 F.3d 994, 997 (9th Cir. 2007). "When the plaintiff fails to plead a specific amount of damages, the defendant seeking removal must prove by a preponderance of the evidence that the amount in controversy

requirement has been met." *Id.* at 998.

In its Opposition, Defendant attempts to say that *Lowdermilk* has been overruled, which it has not, nor has it been negatively treated on appeal. Nor has *Abrego Abrego* been overturned. The Ninth Circuit standard is clear and established. *Abrego Abrego* sums up the standard succinctly in its conclusion: "Nothing in CAFA's language purports to shift the burdens normally applied to removal of a state action to federal court. Dow [Defendant] has failed to meet its burden in demonstrating that the jurisdictional requirements of CAFA are satisfied. For these reasons, we affirm the district court's remand of this action to state court." *Abrego Abrego*, 443 F.3d at 692 (2006).

For the same reasons stated in *Abrego Abrego*, Plaintiff Nana Akua Serwaah Oddei's case should be remanded to the Los Angeles Superior Court.

**b. Standards Applied to Notice of Removal are Less Stringent Than Those Applied in Motion to Remand**

Defendant's primary featured case, *Dart Cherokee Basin Operating Co. v. Owens*, 135 S. Ct. 547 (2014), only states the standard for a notice of removal – "That is the single question argued here" *(Id.)* – and not the standard once a party has challenged the removal, i.e., in the Opposition. The Defendant here frequently inappropriately invokes the *Dart* standard, which simply is not the standard in this case at this juncture.

**c. Optum, Inc.'s Numbers Fall Far Short of the Amount Necessary to Establish Federal Jurisdiction; Further Speculations Fall Flat**

"If the plaintiff contests the defendant's allegation, § 1446(c)(2)(B) instructs: '[R]emoval ... is proper on the basis of an amount in controversy asserted' by the defendant 'if the district court finds, by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold. This provision, added to § 1446 as part of the Federal Courts Jurisdiction and Venue Clarification Act of 2011 (JVCA), clarifies the procedure in order when a defendant's assertion of the amount in

controversy is challenged. In such a case, both sides submit proof and the court decides, by a preponderance of the evidence, whether the amount-in-controversy requirement has been satisfied." *Dart Cherokee Basin Operating Co.*, 135 S. Ct. at 553-54. [Emphasis added.]

Here, like the employer in *Lowdermilk*, Defendants' amount in controversy calculations are based on speculation, conjecture, and bad math. In its only evidence supporting its asserted amount in controversy, Defendant submits the Declaration of Stephanie Perez, Manager of Health Information Systems for Optum, Inc. Ms. Perez declares that she identified a total of "13,965 California medical record requests submitted to Optum or HealthCare Partners and processed either in-house or by ScanSTAT from March 22, 2021 through June 10, 2021, that are legal in nature and were not accompanied by a subpoena." (Perez Decl., ¶ 14). However, Ms. Perez does not report the number of pages requested or the total cost for each request. Thus, the only thing we can assume for certain is that each of these 13,965 requests produced at least one medical record. Based on that assumption (which is what we are forced to do because Optum fails to state how many pages each of these medical records requests consist of), the total amount overcharged for these records would be $2,094.75 – far short of CAFA's jurisdictional threshold.

Then, Defendant's memorandum in support of its Opposition to Plaintiff's Motion to Remand manufactures figures that it places in a table on page 9: "[A]s the below table illustrates, a putative class of nearly 14,000 individuals each seeking over $2,000 more than satisfies the $5 million amount in controversy requirement." Based on Ms. Perez's assertion that a total of 13,965 California medical records requests were submitted to either Optum, HealthCare Partners or ScanSTAT during the class period, Optum leaps to the conclusion that there are therefore nearly 14,000 class members each alleging two separate CMIA violations at $2,000 per violation.

First, Defendant's claim that Plaintiff's Complaint alleges that each class member was subjected to two CMIA violations is complete fiction. Nowhere in the Complaint

does it allege that any class member, other than Plaintiff, was subjected to two separate CMIA violations. The fact that she alleged that her claims are typical of the putative class does not mean that each class member submitted two medical records requests. The Court need look no further than her Complaint to see exactly what was meant by "typicality." That "Plaintiff, like all Class Members, was overcharged for the retrieval and copying of her medical records, had her private medical information disclosed without lawful authorization and has suffered injury as a result," (Complaint, ¶ 37), not that each class member submitted two medical records requests.

Second, if there were an aggregate total of 13,965 medical records requests submitted during the class period (as Ms. Perez claims), and there were 13,965 class members, it would be a mathematical impossibility that those 13,965 class members each submitted two medical records requests because otherwise there would be an aggregate total of 27,930 (13,965 x 2) medical records requests made during the class period. In other words, even if each class member (we don't know the number of class members) was subjected to two separate CMIA violations, there would be no basis to multiply the total aggregate number of medical records requests by $2,000 simply because some of the class members might have submitted multiple records requests. Whether each class member made two, 20 or 100 medical records requests would not change the alleged 13,965-aggregate number of medical records requests collectively made by the class. Indeed, this aggregate number does not change simply because some of the class members submitted more than one personal injury records request. The fact that there might be some class members who made two request would only increase their personal statutory damages, not the aggregate class wide damages or the aggregate number of requests. Thus, the correct formula for calculating the CMIA violations that would flow from the alleged 13,965 medical records requests would be 13,965 x $1,000.

Third, the evidence submitted shows that ScanSTAT processed, at most, 4,155 actionable medical records requests under the CMIA during the class period, not 13,965. This is because Plaintiff's Complaint alleges that the basis for the CMIA violations

against ScanSTAT is that the medical records requests were made "prior to litigation." Indeed, within the CMIA cause of action, the Complaint alleges that "Because Plaintiff's and Class Members' requests were made prior to litigation, SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were not authorized to disclose the requested medical records pursuant to a court order, or a subpoena or subpoena duces tecum issued by a party to a proceeding under Civil Code § 56.10 (b) (l) or (3). (Complaint, ¶ 50). The CMIA cause of action does not say "prior to instituting a workers' compensation claim" or "prior to instituting a disability claim." It very plainly says "prior to litigation." Thus, under the theory of liability pled in Plaintiff's Complaint, any medical records requests that were not made within the context of prelitigation are outside the scope of Plaintiff's CMIA claim.

When you exclude the workers' compensation and disability medical records requests from the CMIA amount in controversy calculations, the total number of actionable requests is at most, 4,155. Consequently, the only potential medical records requests that might be within the scope of Plaintiff's CMIA claim are the 4,155 combined "Personal Injury" and "Litigation" requests. Indeed, the declaration of Ms. Perez states that, "I have located **978** medical record requests invoiced to Optum and HealthCare Partners on ScanSTAT's StatusView customer portal between May 12, 2020, and June 7, 2021, relating to medical services rendered in California that are identified as 'Personal Injury' medical record requests. I am informed that this 'Personal Injury' request category in the Data File Image Now System applies to all legal requests submitted by an attorney or their agent that do not involve a subpoena, workers' compensation, or a Social Security disability claim or appeal." (Perez Dec'l, ¶¶ 8). She further states that she "located an additional **3,177** medical record requests processed and inventoried on ScanSTAT's Data File Image Now system with request dates between March 22, 2017, and December 16, 2020, relating to medical services rendered in California that are identified as 'Litigation' medical record requests. I am informed that this 'Litigation' request category in the Data File Image Now System applies to all

legal requests submitted by an attorney or their agent that do not involve a subpoena, workers' compensation, or a Social Security disability claim or appeal." (Perez Dec'l, ¶¶ 8-9).

Ms. Perez claims that she is "informed" that the "Personal Injury" and "Litigation" medical records requests processed on ScanSTAT's data file are all in fact prelitigation requests that do not involve workers' compensation or social security requests. But Ms. Perez does not represent ScanSTAT and cannot speak on its behalf. Further, her belief that all 4,155 "Personal Injury" and "Litigation" requests were made in prelitigation is inadmissible speculation and conjecture. Indeed, she fails to explain how she arrived at the conclusion that any and all medical records requests that are characterized as "Personal Injury" and "Litigation" are necessarily prelitigation requests. In fact, the 3,177 "Litigation" requests appear on their face to be requests that were not made in prelitigation. This is because the word "Litigation" necessarily means that the matter is no longer in prelitigation. As such, her assertion that all **4,155** "Personal Injury" and "Litigation" medical records requests identified in ScanSTAT's data files are in fact prelitigation requests is pure speculation and conjecture. Thus, Optum, Inc. has failed to establish how many prelitigation medical records requests were processed by ScanSTAT during the class period. And without this figure, it is impossible to calculate the amount of CMIA statutory damages are in controversy as to ScantSTAT. As such, Optum has failed to establish that a single one of the 4,155 "Personal Injury" or "Litigation" medical records requests were prelitigation in nature, and therefore within the scope of her CMIA claim. Consequently, Optum has shown an amount of controversy of $0 with respect to the CMIA claim.

But even if the Court accepted that each and every one of the 4,155 medical records requests that Ms. Perez viewed on ScanSTAT's data files was in fact a prelitigation medical records request, the total statutory damages put in controversy against ScanSTAT would be $4,155,000 (4,155 x $1,000), as detailed in the chart below.

| Type of Legal Request Received | Number of Legal Requests | Projected Maximum Statutory Damages | Lodestar Attorneys' Fees | Amount In Controversy |
|---|---|---|---|---|
| Pre-litigation requests for medical records | 4,155 | $4,155,000 | $360,000 | $4,515,000 |

Additionally, Plaintiff's Complaint asserts such violations against co-Defendant ScanSTAT Technologies, not Optum, Inc., the party that has submitted this Opposition. In fact, ScanSTAT has not yet appeared in this case, as was reported in the Joint Report Pursuant to Federal Rule of Civil Procedure 26(f), filed by Plaintiff and Optum and no other Defendant.

In sum, Defendant does not provide the substantive evidence, and Defendant makes no plausible claim supporting the amount-in-controversy requirement for federal jurisdiction. Therefore, this action should be remanded to the Los Angeles County Superior Court.

**d. Defendant Failed to Prove More Likely Than Not that Attorneys' Fees Would Exceed $845,000**

Assuming the Court finds that Optum has established that ScanSTAT processed 4,155 prelitigation medical records requests, then Plaintiff would have to incur more than $845,000 in attorneys' fees to reach CAFA's jurisdictional threshold. Here, Mr. Bruce Murray's hourly rate for legal services is $450. Thus, he would have to bill 1,878 hours to exceed $845,000 in attorneys' fees. Here, the number of hours that Plaintiff's counsel would spend on this suit would likely be in the range of 600-800. At a rate of $450 per hour, the total fees incurred would be a maximum of $360,000.

## IV. CONCLUSION

For all of the reasons detailed here, Plaintiff respectfully requests that the Court remand this action to the Los Angeles Superior Court.

**PIMENTEL LAW, P.C.**

Dated: June 25, 2021

By: [signature]
Bruce T. Murray, Esq.
Attorney for Plaintiff

**DECLARATION OF BRUCE T. MURRAY**

I, Bruce T. Murray, declare as follows:

1. I am an attorney at law duly licensed to practice before the United States District Court, Central District of California, and am the attorney of record for Plaintiff in the above-entitled action.

2. I have personal knowledge of all facts contained within this declaration.

3. If called to testify to any fact contained within this declaration, I would and could be competent to do so.

4. I am an associate attorney at Pimentel Law, P.C., and I have been licensed to practice law since 2015. My hourly rate for legal services as of 2021 is $450.

5. My hourly rate is commensurate with the rates charged by other Los Angeles attorneys with similar experience.

6. Thus far, Pimentel Law, P.C. has logged 99 billable hours in connection with this matter.

7. I estimate the total time I would spend on this suit be in the range of 600-800. At a rate of $450 per hour, the total fees incurred would be a maximum of $360,000.

I declare under the penalty of perjury under the laws of the United States that the foregoing is true and correct.

Dated: June 25, 2021

By /s/ [signature]
Bruce T. Murray