**PIMENTEL LAW, P.C.**
Gabriel J. Pimentel, Esq. (SBN 265328)
GJP@PimentelLaw.com
Bruce T. Murray, Esq. (SBN 306504)
BTM@PimentelLaw.com
30 N. Raymond Avenue, Suite 210
Pasadena, CA 91103
Telephone: (626) 765-6505
Fax: (626) 628-3041

Attorneys for Plaintiff and Putative Class,
NANA AKUA SERWAAH ODDEI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NANA AKUA SERWAAH ODDEI, an individual, on behalf of all others similarly situated,

Plaintiff,

vs.

OPTUM, INC., DAVITA MEDICAL GROUP CALIFORNIA, P.C., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., SCANSTAT TECHNOLOGIES, LLC, and DOES 1-20 inclusive,

Defendants.

Case No. 2-21-cv-03974

**PLAINTIFF'S OPPOSITION TO DEFENDANTS OPTUM, INC. AND HEALTHCARE PARTNERS MEDICAL GROUP'S MOTION TO DISMISS**

Date: August 13, 2021
Time: 8:30 a.m.
Courtroom: 6C
Judge: Hon. Stanley Blumenfeld, Jr.

Removal filed: May 11, 2021

Action Filed: March 22, 2021
Trial Date: None set

# Table of Contents

**I. INTRODUCTION ........ - 1 -**

**II. ARGUMENT ........ - 2 -**

a. Rule 8 Pleading Standard ........ - 2 -

b. Whether or Not Defendants Are 'Medical Providers' Is Irrelevant to Their Obligation to Comply With Cal. Evid. Code § 1158 ........ - 4 -

c. Defendants Qualify as Partners in a Civil Conspiracy ........ - 5 -

d. In Addition to a Civil Conspiracy, Plaintiff Will Plead That Defendants Had a Contractual Relationship ........ - 6 -

e. Defendants Defy Logic and Basic Agency Principles in Attempt to Avoid the Statute ........ - 8 -

f. Plaintiff's Claim of Unfair Competition Is Entirely Sound ........ - 9 -

g. Defendants Misapply Statutory Construction and Misconstrue the Statute ........ - 11 -

h. Defendants Can be Liable for Violation of California Evidence Code § 1158 Even if They are Not Medical Providers ........ - 13 -

**III. CONCLUSION ........ - 13 -**

# Table of Authorities

## Cases


*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994) .......... - 5 -

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... - 2 -

*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94 .......... - 10 -

*Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977) .......... - 4 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .......... - 2 -

*Black v. Sullivan* (1975) 48 Cal.App.3d 557 .......... - 9 -

*Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163 (1999) .......... - 10 -

*Doctors' Co. v. Superior Court*, 49 Cal.3d 39 (1989) .......... - 5 -, - 6 -, - 9 -

*Foman v. Davis*, 371 U.S. 178 (1962) .......... - 3 -

*Hunt v. Super. Ct.*, 21 Cal. 4th 984 (1999) .......... - 11 -

*In re Corrine W*, 45 Cal.4th 522 (2009) .......... - 11 -

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006) .......... - 10 -

*Mosier v. Southern Cal. Physicians Ins. Exchange*, 63 Cal.App.4th 1022 (1998) .......... - 6 -

*National Football League Management Council v. Superior Court* (1983) 138 Cal.App.3d 895 .......... - 12 -

*People v. McKale*, 25 Cal.3d 626 (1979) .......... - 10 -

*People v. Watson* (2007) 42 Cal.4th 822 .......... - 11 -

*Rincon Del Diablo Municipal Water Dist. v. San Diego County Water Authority* (2004) 121 Cal.App.4th 813 .......... - 12 -

*Rubin v. Green* (1993) 4 Cal.4th 1187 .......... - 10 -

*Saunders v. Superior Court*, 27 Cal.App.4th 832 (1994) .......... - 10 -

*Skarbrevik v. Cohen, England Whitfield* (1991) 231 Cal.App.3d 692 .......... - 6 -

*Thornburg v. Superior Ct.*, 138 Cal.App.4th 43 (2006) .......... passim

**Statutes**

Business & Professions Code § 17200 ........................................................ - 10 -
California Evidence Code § 1158 ........................................................ passim
Fed. Rules Civ. Proc. R 15 ........................................................ - 3 -
Fed. Rules Civ. Proc. R 8 ........................................................ - 2 -

**Treatises**

Restat. of Agency § 2.04 ........................................................ - 8 -
Restat. of Agency 3d, § 1.01 ........................................................ - 8 -
Witkin, Summary of Cal. Law (10th ed.) Contracts, § 740 ........................................ - 7 -

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

In their Motion to Dismiss, Defendants read and interpret this case's central statute – California Evidence Code section 1158 – as if it has never been read or interpreted by a court before; when in fact, the Court of Appeal has interpreted and applied this statute in a directly analogous case, *Thornburg v. Superior Ct.*, 138 Cal.App.4th 43 (2006).

That case involved the same constellation of parties as this case: Bactes Imaging Solutions, Inc., like ScanSTAT here; El Centro Regional Medical Center, like the Optum, Inc.-affiliated medical providers who treated this Plaintiff; and third-party contractors involved in the copying and invoicing, positions that could be occupied here by Optum, Inc. or HealthCare Partners Medical Group. If not occupying that third-party position, Optum, Inc. and HealthCare Partners Medical Group could be said to operating in conspiracy with the first-in-line "medical provider," a theory suggested in *Thornburg*, as will be analyzed below.

In *Thornburg's* closely parallel set of facts, when a patient or the patient's representative made a request for records, the hospital forwarded that request to Bactes, and Bactes would make copies of the records and provide the copies to the patient or his or her attorney. In its ruling, the Court found that none of the parties involved were exempt from California Evidence Code § 1158: "By its express terms, Evidence Code section 1158 limits the amount health care providers may charge for copying patient records and providing them to attorneys retained by patients. Under the terms of its agreement with the hospital, Bactes [in the contracting position] had the obligation of responding to section 1158 requests and is therefore subject to the limitations of the statute. *Thornburg v. Superior Ct.*, 138 Cal.App.4th 43, 46 (2006).

In terms of the procedural standard for its Rule 12(b)(6) motion, Defendants miss the mark in their application of their own cited cases, *Ashcroft v. Iqbal* and *Bell Atl. Corp. v. Twombly* – the primary Supreme Court cases for testing the sufficiency of a

pleading under Rule 8. As explained by the Court, the far ends of examining a complaint are as follows: At one end, the "mere possibility" that the facts pleaded in the complaint establish the causes of action; and at the other end, "probability" that the facts pleaded establish liability. In the middle is "plausibility." Plausibility is the operative standard, as will be detailed below.

But in their Motion to Dismiss, Defendants dance around the standards, give only partial quotes, and then misapply the tests enunciated by the Court. In her complaint, Plaintiff Nana Akua Serwaah Oddei more than establishes the plausibility of her claims. But if anything were missing in her pleading, Plaintiff is fully entitled to amend her complaint to fill in any missing legally relevant facts. As the Court concluded in *Iqbal:* "The Court of Appeals should decide in the first instance whether to remand to the District Court so that respondent can seek leave to amend his deficient complaint." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009).

## II. ARGUMENT

### a. Rule 8 Pleading Standard

Defendants' Motion claims that Plaintiff's complaint fails to comply with Rule 8 of the Federal Rules of Civil Procedure, but somehow it fails to quote the rule. Rule 8 states: "Claim for Relief. A pleading that states a claim for relief must contain … (2) a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. Rules Civ. Proc. R 8.

The Court has substantially interpreted Rule 8 over the decades, but Defendants only briefly and partially quote the standard. They begin by quoting this sentence: "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The quote is accurate and applicable, but then Defendants' case quotes become partial. Their redacted case quote is now quoted in full: "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."

At that point in their Memorandum, an explanation of the standard is entirely missing. To fill in the blank, here it is: "Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions … Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft*, 556 U.S. at 664 (2009).

Here, Plaintiff lays out the facts and events, as she experienced them, factually, and with no opinion or conjecture. In *Ashcroft*, the Plaintiff, Javaid Iqbal, a citizen of Pakistan and a Muslim, alleged purposeful and unlawful discrimination when he was arrested following the September 11, 2001 terrorist attacks. Iqbal's claims that required far more than basic facts, but an intent, in order to establish discriminatory intent on the part of federal officials. By contrast, the facts necessary to establish the causes of action in this case are straightforward, in terms of dollars and cents. Whatever these Defendants' intentions are not at issue. Plaintiff's claims meet the plausibility standard.

However, if this Court decides that any legally relevant facts are missing from Ms. Oddei's complaint, the procedural remedy is clear: leave to amend. *Ashcroft*, 556 U.S. 662 at 687 (2009). The standard for leave to amend is liberal: "The court should freely give leave when justice so requires." Fed. Rules Civ. Proc. R 15. Denial of a request to amend "without any apparent justifying reason was an abuse of discretion." *Foman v. Davis*, 371 U.S. 178 (1962). "Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules." *Id.* at 182, and cited by *Beeck v. Aquaslide 'N' Dive Corp.*, 562 F.2d 537, 540 (8th Cir. 1977).

**b. Whether or Not Defendants Are 'Medical Providers' Is Irrelevant to Their Obligation to Comply with Cal. Evid. Code § 1158**

Defendants spend the bulk of their Motion to Dismiss by attempting to define "medical provider" – and then denying that they are medical providers. In fact, whether or not they are medical providers, by any definition, is irrelevant to their obligation to comply with Evidence Code section 1158 in this context, as the Court of Appeal has explicitly ruled.

In *Thornburg*, that Defendant's mis-interpretation would limit the duty imposed by the statute strictly to the persons and entities named in the first paragraph of the statute, i.e., "medical providers," which "would undermine the obvious purpose of the cost limitations set forth in the fifth paragraph." *Thornburg,* 138 Cal.App.4th at 51 (2006). As that Court ruled, reciting facts strikingly similar to this case:

> Under Bactes's [Defendant's] interpretation, a patient seeking records covered by section 1158 must pay Bactes its copying charges, which exceed the statutory limit, because Bactes is not one of the health care providers enumerated in the first paragraph. The patient must then either simply forego the cost limitations set forth in the statute or attempt to recoup from the health care provider expressly covered by the statute the difference between the amount Bactes charged and the statutory maximum. It is difficult to believe that having expressly placed the cost limitations in the statute the Legislature intended that they could either be avoided by having another entity respond to the section 1158 request or only enforced by way of the circuitous and burdensome remedy of recovering the cost differential from an expressly covered health care provider.
>
> In sum we are not willing to so strictly limit liability under statute that the entities denominated in the first paragraph of the statute can easily avoid the requirements of the statute. If the Legislature really intended that health care providers could avoid the cost limitations set forth in the fifth paragraph of

the statute by simply retaining a copy service, we doubt the Legislature would have taken the trouble to impose those limitations in the first place. *Thornburg*, 138 Cal.App.4th at 52 (2006).

Here, Defendants want to do exactly what the Court says they cannot: Escape liability by defining themselves out of the statute and completely avoiding the issue of their relationship with statutorily defined medical providers. In amending the complaint, this Plaintiff will allege that Optum, Inc. and HealthCare Partners Medical Group were acting on behalf of various medical providers; and that the requirements Evidence Code § 1158 apply to Optum, Inc. and HealthCare Partners Medical Group even if they are not medical providers. *Thornburg* analyzes and suggests three different scenarios in which a third party non-medical provider falls under the requirements of Cal. Evid. Code § 1158: via a contractual relationship, an agency relationship or a civil conspiracy – as analyzed below:

**c. Defendants Qualify as Partners in a Civil Conspiracy**

*Thornburg* quotes two instructive cases in which parties share civil liability via a civil conspiracy: *Doctors' Co. v. Superior Court*, 49 Cal.3d 39 (1989) and *Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503 (1994). Because the parties in *Thornburg* were involved in a standard contractual relationship, the Court didn't need to delve too deeply into conspiracy theory. But using the cases the Court cites, such a delve would reveal the following:

"By participation in a civil conspiracy, a coconspirator effectively adopts as his or her own the torts of other coconspirators within the ambit of the conspiracy. In this way, a coconspirator incurs tort liability co-equal with the immediate tortfeasors." *Applied Equipment Corp.*, 7 Cal.4th at 510-11 (1994).

"We agree with SCPIE [Defendant] that the general rule is that a party who is not personally bound by the duty violated may not be held liable for civil conspiracy even though it may have participated in the agreement underlying the injury. *(Applied Equipment Corp. v. Litton Saudi Arabia Ltd.* (1994) 7 Cal.4th 503, 511; Doctors' Co. v.

Superior Court, supra, 49 Cal.3d at p. 44.) However, an exception to this rule exists when the participant acts in furtherance of its own financial gain. *(Doctors' Co. v. Superior Court*, supra, 49 Cal. 3d at p. 47; *Skarbrevik v. Cohen, England Whitfield* (1991) 231 Cal.App.3d 692, 709." *Mosier v. Southern Cal. Physicians Ins. Exchange*, 63 Cal.App.4th 1022, 1048 (1998).

Here, the parties had an agreement – whether contractual, conspiratorial or otherwise – to provide documents in response to a request from a patient or his or her representative; part of that arrangement involved the overcharging of documents; and all parties experienced financial gain in the process. Plaintiff's complaint alleges that this financial enterprise was effected via a civil conspiracy: "Plaintiff is further informed and believes, and based thereupon alleges, that OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., DAVITA MEDICAL GROUP CALIFORNIA, P.C., SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 formed and executed a **conspiracy** or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said **conspiracy**, intended to cause and actually causing Plaintiff and Class Members harm." (¶ 12). [Emphasis added.]

The elements of a civil conspiracy are satisfied; Plaintiff has pleaded her case sufficiently.

**d. In Addition to a Civil Conspiracy, Plaintiff Will Plead That Defendants Had a Contractual Relationship**

As was the basic factual scenario in *Thornburg*, Defendant Bactes entered into a contract with El Centro Regional Medical Center to provide copy services for the hospital. *Thornburg*, 138 Cal.App.4th at 46 (2006). All fees mailed to the hospital with requests for copies for patient charts were to be given to Bactes's "representative" – another potential party to either the conspiracy or the contract. *Id.* Bactes agreed that its representative would copy the requested records and then invoice, package and mail the copies to the patients, attorneys, insurance companies or physicians who requested the

records. *Id.*

Here, in terms of the parallel lineup of players, the same fact scenario could include Optum, Inc., Optum, Inc.-affiliated medical providers, HealthCare Partners Medical Group, and ScanSTAT.

With respect to collecting fees from individuals and entities requesting copies, the Bactes-El Centro contract provided, "'El Centro Regional Medical Center will not be held responsible for the collecting of copy fees from requesting parties. Bactes is solely responsible to collect all fees.'" *Id.* That arrangement represented those parties' attempt to avoid the requirements of California Evidence Code § 1158. But the court saw right through it:

"Given section 1158's manifest purpose of limiting the cost of copying, we cannot construe the scope of the statute so narrowly and mechanically that the limitation is easily and effectively avoided by health care providers who attempt to contract away their responsibilities under the statute. On the other hand, we cannot by way of judicial construction radically expand the scope and impact of the statute. Thus, as we interpret the admittedly ambiguous provisions of section 1158, the agents or contractors of entities expressly covered in the first paragraph of the statute may be held liable under the statute but only if (1) they have assumed the duty of responding to section 1158 requests and (2) they are acting for their own advantage and benefit as well as the interests of entities expressly covered by the statute." *Thornburg*, 138 Cal.App.4th at 51 (2006).

Not surprisingly, these Defendants' Motion makes no mention of any contractual or conspiratorial agreement among them. However, Plaintiff is informed and believes that Optum, Inc. and Health Care Partners were acting as agents of various medical providers either by a contractual relationship or a civil conspiracy. Plaintiff's complaint alleges agency and conspiracy, and she will amend the complaint to allege that the parties had a contractual arrangement if the Court believes that the current pleadings are insufficient.

**e. Defendants Defy Logic and Basic Agency Principles in Attempt to Avoid the Statute**

After attempting to write themselves out of California Evidence Code § 1158, Defendants attempt to step out of the statute by using a play on logic. They state, "Nor is there any express language in the operative statute stating that a medical provider's employer is subject to Section 1158." (Defendants' Motion at 8). Defendants' Motion does not fully explain what this passage means, but apparently it is this: If Optum et al. "employed" someone else to copy the medical records and overcharge the person requesting the documents, then Optum is innocent of that. The argument appears to be an attempt to skew Agency principles – where the Principal delegates a task to an Agent; but then somehow the Agent is innocent of the deed. Here are the actual principles of Agency:

"Agency is the fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restat. of Agency 3d, § 1.01. "An employer is subject to liability for torts committed by employees while acting within the scope of their employment." *Id.* § 2.04 (Respondeat Superior).

Agency theory is the third primary principle behind the *Thornburg* decision:

> When agents and employees are acting in their official capacities on behalf of their principals and not as individuals for their own advantage, their acts are generally privileged and do not give rise to liability in tort or under statutes which impose duties on their principals … However, the cases also recognize that an agent loses his or her protection when he is acting for his own benefit or advantage rather than solely on behalf of and at the direction of his or her principal. (See *Doctors' Co. v. Superior Court*, supra, 49 Cal.3d at pp. 46-47; *Wise v. Southern Pacific Co.*, supra, 223 Cal.App.2d at p. 72; *Black v. Sullivan* (1975) 48 Cal.App.3d 557, 567-568. This exception has

> been applied most notably in situations where a third party, not subject to a statutory obligation, assisted a principal in violating the statute and did so not only to advance the principal's interest but because the third party had an independent financial interest in the transaction. … Thus the lack of liability under the statute not prevent their liability for a failure to comply with that section under a theory that they aided, cooperated and assisted in the beneficiaries' noncompliance or conspir[acy].
>
> As we have interpreted section 1158, whether Bactes is an agent of the hospital such that under traditional agency principals the hospital is liable for Bactes's conduct is not material. The critical question is whether, as an agent or independent contractor, Bactes assumed the duty of responding to section 1158 requests. *Thornburg*, 138 Cal.App.4th at 53-54 (2006).

Here, Plaintiff's complaint alleges an agency relationship among the parties: "Plaintiff is informed and believes and based thereupon alleges, that at all times relevant hereto, Defendants OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., DAVITA MEDICAL GROUP CALIFORNIA, P.C., SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter egos, successors, and/or joint ventures of one another, and in committing the acts alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, successor status and/or joint venture and with the permission and consent of each other." (¶ 11).

Defendants attempt to wiggle out of the complaint by avoiding agency principles, or by extracting themselves from an agency relationship in order to point the finger at someone else.

**f. Plaintiff's Claim of Unfair Competition Is Entirely Sound**

At this point in its Motion, Defendants attempt to get Shakespearean by saying "Plaintiff's UCL Claims Are Fatally Flawed" (Mot. at 11), when in fact their Motion is

so flawed; and Plaintiff's pleading is sound.

Again, Defendants fail to quote the applicable statute. To their credit, Defendants quote an applicable case, but again only a partial quote. Here is the full quote: "[T]he unfair competition law's scope is broad. Unlike the Unfair Practices Act, it does not proscribe specific practices. Rather, as relevant here, it defines 'unfair competition' to include 'any unlawful, unfair or fraudulent business act or practice.' (§ 17200.) Its coverage is 'sweeping, embracing' – 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *(Rubin v. Green* (1993) 4 Cal.4th 1187, 1200, quoting *Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 113.) *Cel-Tech Communications, Inc. v. Los Angeles Cellular Telephone Co.*, 20 Cal.4th 163, 180 (Cal. 1999).

This cause of action, Plaintiff's third, is indeed derivative of the First Cause of Action, as Defendants correctly point out. In fact, a UCL claim is legitimately derivative, by definition: The "unlawful" practices prohibited by section 17200 are any practices forbidden by law, be it civil or criminal, federal, state, or municipal, statutory, regulatory, or court-made. *People v. McKale*, 25 Cal.3d 626, 632 (1979). As the California Supreme Court put it, section 17200 "borrows" violations of other laws and treats them as unlawful practices independently actionable under section 17200 et seq. *Saunders v. Superior Court*, 27 Cal.App.4th 832 (1994).

In this section of Defendants' Motion, they suggest that Plaintiff has not only alleged unfair business practices, but "immoral" business practices, i.e., "Before the California Supreme Court's Cel-Tech decision, courts held that 'unfair' conduct occurs when a business practice 'violates established public policy or … is **immoral**, unethical, oppressive or unscrupulous and causes injury to consumers which outweighs its benefits.' *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)." (Mot. at 12). (Emphasis added.)

Plaintiff's complaint alleges unlawful conduct on the part of Defendants; she alleges no immoral conduct.

In its final attempt to avoid UCL, Defendants attempt to argue that Plaintiff does not have standing because it was her attorney who was overcharged for receiving her medical records, rather than Ms. Oddei herself; and therefore somehow "the complaint does not adequately allege an economic injury" (Mot. at 11) – as if somehow, Ms. Oddei's attorney was not acting on her behalf. This argument further twists Agency principles. Defendants also ignore the standard business practice involving "costs and fees": the costs of litigation are routinely deducted from any settlement, as is standard practice.

**g. Defendants Misapply Statutory Construction and Misconstrue the Statute**

To their credit, Defendants' Motion includes a section on statutory construction, containing the following quotes: "We begin with the statute's plain language, as the words the Legislature chose to enact are the most reliable indicator of its intent. *(People v. Watson* (2007) 42 Cal.4th 822, 828." *In re Corrine W*, 45 Cal.4th 522, 529 (2009). Furthermore, "In determining intent, we look first to the words of the statute, giving the language its usual, ordinary meaning. If there is no ambiguity in the language, we presume the Legislature meant what it said, and the plain meaning of the statute governs." *Hunt v. Super. Ct.*, 21 Cal. 4th 984, 1000 (1999).

But then, rather than applying these principles of statutory construction, Defendants simply write themselves out of the statute (Cal. Evid. Code § 1158) as "medical providers," in a conclusory fashion. Then they diverge into the legislative history of the enactment of the Code, in an attempt to divine the legislators' intent – which they somehow conclude was not to include **them** in the statute. Defendants triumphantly conclude, "The California Legislature's markedly narrow definition of 'medical providers' under Section 1158 and the much broader 'health care providers' definition under the Patient Access Law demonstrates the Legislature's intent that not all providers of health care subject to the Patient Access law are subject to Section 1158." (Defendants' Motion at 8).

The most directly applicable case here, *Thornburg*, contains its own section on statutory construction that is highly instructive in understanding the meaning of California Evidence Code section 1158:

> "We first examine the words themselves because the statutory language is generally the most reliable indicator of legislative intent. The words of the statute should be given their ordinary and usual meaning and should be construed in their statutory context … Thus the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose … Statutes should be construed so as to be given a reasonable result consistent with the legislative purpose. The court should take into account matters such as context, the object in view, the evils to be remedied, the history of the times and of legislation upon the same subject, public policy, and contemporaneous construction. *(Rincon Del Diablo Municipal Water Dist. v. San Diego County Water Authority* (2004) 121 Cal.App.4th 813, 818-819.
>
> Consistent with the rules of construction, we look first to the language of the statute. The first paragraph of the statute sets forth the underlying duty of health care providers to give patients access to their medical records. As the court in *National Football League Management Council v. Superior Court* (1983) 138 Cal.App.3d 895, 903, stated: 'Evidence Code section 1158 states a clear public policy of permitting a patient, before filing any action, to inspect and to copy any medical records concerning the patient. The legislative purpose behind the enactment is not stated, but its apparent goal is to permit a patient to evaluate the treatment he or she received before determining whether to bring an action against the medical provider. Section 1158 also enables the patient to seek freely advice concerning the adequacy of medical care and to create a medical history file for the patient's information or subsequent use.'" *Thornburg*, 138 Cal.App.4th at 50 (2006).

Here, this Plaintiff was attempting to use the statute exactly as the Court applied it in that case. But these Defendants want to uninterpret, misinterpret it, or simply write themselves out of the statute. This multi-pronged mis-effort should not be accepted by this court.

**h. Defendants Can Be Liable for Violation of California Evidence Code § 1158 Even if They are Not Medical Providers**

Defendants can be liable for violations of California Evidence Code § 1158 even if they are not themselves medical providers. The *Thornburg* court explored this concept:

“At the time Bactes entered into its agreement with the hospital, Bactes had constructive, if not actual, notice of the terms of section 1158. Thus, Bactes was aware of the hospital's obligations under the statute and the cost limitations of the fifth paragraph. Having entered into an agreement with the hospital under which the hospital agreed it would not provide requested records but would instead permit Bactes to do so, it is entirely fair that the hospital's statutory obligations be imposed on Bactes. In this regard we note the provisions of Civil Code section 1589: ‘A voluntary acceptance of the benefit of a transaction is equivalent to a consent to all the obligations arising from it, so far as the facts are known, or ought to be known, to the person accepting.’ (See also 1 Witkin, Summary of Cal. Law (10th ed.) Contracts, § 740, pp. 824-827.)” *Thornburg*, 138 Cal.App.4th at 54 (2006).

Here, Optum, Inc. and HealthCare Partners Medical Group undertook a duty to produce medical records and benefit financially by overcharging patients or their representatives. Because they can be held liable for violation of California Evidence Code § 1158 under either conspiracy, agency or contract theory, and Plaintiff can amend her pleading to make these allegations, she should be granted leave to amend if the Court finds any merit to Defendants’ Motion.

**III. CONCLUSION**

For all of the reasons detailed here, Plaintiff respectfully requests that the Court

deny Defendants' Motion to Dismiss. And if the Court decides that any legally relevant facts are missing from Ms. Oddei's Complaint, Plaintiff respectfully requests leave to amend.

**PIMENTEL LAW, P.C.**

Dated: July 22, 2021

By: <u>*/s/ Bruce T. Murray*</u>
Bruce T. Murray, Esq.
Attorney for Plaintiff