**PIMENTEL LAW, P.C.**
Gabriel J. Pimentel, Esq. (SBN 265328)
GJP@PimentelLaw.com
Bruce T. Murray, Esq. (SBN 306504)
BTM@PimentelLaw.com
30 N. Raymond Avenue, Suite 210
Pasadena, CA 91103
Telephone: (626) 765-6505
Fax: (626) 628-3041

Attorneys for Plaintiff and putative class

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NANA AKUA SERWAAH ODDEI, an individual, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OPTUM, INC., a Delaware corporation, HEALTHCARE PARTNERS MEDICAL GROUP, P.C., a California corporation, SCANSTAT TECHNOLOGIES, LLC, a Delaware limited liability company and DOES 1 through 20 inclusive,<br><br>Defendants. | Case No.: 2-21-cv-03974<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR:**<br><br>1. Violation of California Evidence Code § 1158;<br><br>2. Violation of California Civil Code §§ 56, et seq.;<br><br>3. Unfair Competition in violation of California Business & Professions Code §§ 17200, et seq.<br><br>**Jury Trial Demanded** |

1. Plaintiff NANA AKUA SERWAAH ODDEI, on behalf of herself and all others similarly situated, is informed and believes and thereon alleges as follows:

**PARTIES, VENUE AND JURISDICTION**

2. Plaintiff brings this Class Action, pursuant to California Civil Procedure Code § 382, on behalf of herself and all others similarly situated (the "Class" or "Class

Members”). Namely, all persons who were charged more than the amounts permitted under California Evidence Code § 1158 for retrieval and copying of records within four years prior to the filing of this Complaint, as well as all persons whose private medical information was disclosed without lawful authorization for purposes other than providing health care services in violation of the Confidentiality of Medical Information Act, California Civil Code § 56, et seq., (“CMIA”).

3. Plaintiff seeks declaratory, injunctive and equitable relief, restitution, disgorgement of profits, monetary damages, attorneys’ fees and all other relief the Court deems appropriate.

4. Plaintiff NANA AKUA SERWAAH ODDEI was at all times relevant hereto a resident of Canyon Country, California.

5. At all relevant times herein, Defendant OPTUM, INC. was a Delaware corporation doing business in California under the name Optum Care.

6. At all relevant times herein, Defendant HEALTHCARE PARTNERS MEDICAL GROUP, P.C. was a California corporation doing business in California.

7. In November 2012, HEALTHCARE PARTNERS MEDICAL GROUP, P.C., which was known as HEALTHCARE PARTNERS MEDICAL GROUP, INC. at that time, merged with DaVita Inc., and operated as a DaVita Medical Group prior to being acquired by and renamed to OPTUM, INC.

8. HEALTHCARE PARTNERS MEDICAL GROUP, P.C. became part of OPTUM, INC. in 2019 as part of OPTUM, INC.’s acquisition of DAVITA MEDICAL GROUP CALIFORNIA, P.C.

9. At all relevant times herein, Defendant SCANSTAT TECHNOLOGIES, LLC was a Delaware limited liability company doing business in California.

10. Venue is proper pursuant to California Civil Procedure Code §§ 395 (a) and 395.5 because this suit was filed in the county where the liability arises, where the breach occurred and where Defendants’ resided at the commencement of this action.

11. The true names and capacities, whether individual, corporate, associate, or

otherwise, of the Defendants named herein as DOES 1-20, inclusive, are unknown to Plaintiff at this time and therefore these Defendants are sued by such fictitious names. Plaintiff will seek leave to amend this Complaint to insert the true names and capacities of these Defendants when they become known to Plaintiff. Plaintiff is informed and believes and based thereupon alleges, that each of the fictitiously named Defendants is responsible for the wrongful acts alleged herein and are therefore liable to Plaintiff as alleged hereinafter.

12. Plaintiff is informed and believes and based thereupon alleges, that at all times relevant hereto, Defendants OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were the agents, employees, managing agents, supervisors, coconspirators, parent corporation, joint employers, alter egos, successors, and/or joint ventures of one another, and in committing the acts alleged herein, were acting at least in part within the course and scope of said agency, employment, conspiracy, joint employer, alter ego status, successor status and/or joint venture and with the permission and consent of each other.

13. Plaintiff is informed and believes and based thereupon alleges, that OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 acted in concert with one another to commit the wrongful acts alleged herein, and aided, abetted, incited, compelled and/or coerced one another in the wrongful acts alleged herein, and/or attempted to do so. Plaintiff is further informed and believes, and based thereupon alleges, that OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., DAVITA MEDICAL GROUP CALIFORNIA, P.C., SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 formed and executed a conspiracy or common plan pursuant to which they would commit the unlawful acts alleged herein, with all such acts alleged herein done as part of and pursuant to said conspiracy, intended to cause and actually causing Plaintiff and Class Members harm.

14. Plaintiff is informed and believes and based thereupon alleges, that OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., SCANSTAT

TECHNOLOGIES, LLC and DOES 1-20 had mutual contractual relationships amongst themselves and with originating medical providers throughout California; the performance of such contracts involved violations of California Evidence Code § 1158, as alleged herein; the performance of such contracts involved the commission of the other wrongful acts alleged herein, and such contractual performance caused Plaintiff and Class Members harm.

15. Whenever and wherever reference is made in this Complaint to any act or failure to act by a Defendant or co-Defendant, such allegations and references shall also be deemed to mean the acts and/or failures to act by each Defendant acting individually, jointly and severally.

## GENERAL ALLEGATIONS

16. On August 20, 2020, Plaintiff was involved in a motor vehicle collision.

17. From August 24, 2020 to October 11, 2020, Plaintiff received treatment at OPTUM, INC. and/or OPTUM, INC.-affiliated medical providers for various injuries related to the collision. Plaintiff is informed and believes that these medical providers were employees of OPTUM, INC. and/or delegated to OPTUM, INC. the responsibility of responding to patient medical records requests.

18. Plaintiff retained counsel to represent her in a suit for personal injuries against the driver of the automobile that struck her.

19. On September 22, 2020, Plaintiff's counsel's office requested all medical records pertaining to treatment rendered to Plaintiff at OPTUM, INC. or OPTUM, INC.-affiliated medical providers. The request included an authorization form signed by Plaintiff authorizing OPTUM, INC. to release the records to her counsel.

20. After receiving the request for medical records, OPTUM, INC. forwarded that request to SCANSTAT TECHNOLOGIES, LLC.

21. On October 11, 2020, SCANSTAT TECHNOLOGIES, LLC sent Plaintiff's counsel an invoice in the amount of 10.40. The invoice included a charge for the copying of 30 pages at a rate of .25¢ per page, as well as $2.90 for shipping charges despite that the

records were faxed. The invoice failed to provide any further details or explanation, such as the clerical costs incurred in locating and making the records available. Plaintiff's counsel paid the invoice in full, which Plaintiff is contractually obligated to reimburse at the conclusion of her suit per her retainer agreement with counsel.

22. After October 11, 2020, Plaintiff continued to receive treatment at OPTUM, INC. and its affiliated medical providers, which included treatment related to her auto accident.

23. On October 12, 2020, SCANSTAT TECHNOLOGIES, LLC responded to Plaintiff's September 22, 2020 request for records, producing 36 pages of documents via fax. The first page of the records stated that the production was made on behalf of HEALTHCARE PARTNERS MEDICAL GROUP. It states: "ATTENTION … HEALTHCARE PARTNERS MEDICAL contracts with ScanSTAT Technologies or one of its affiliates to reproduce exact copies of the original record as specified in the request letter."

24. Among the 36 pages of documents produced was one record that was signed, "Your Optum Clinician, Lina Sosoian." The medical documents also include the footer, "Optum® is a trademark of Optum, Inc. © 2020 Opturn, Inc. All rights reserved."

25. On March 2, 2021, Plaintiff's counsel submitted a supplemental request for all medical records pertaining to treatment rendered to Plaintiff at OPTUM, INC. medical providers encompassing the time period after October 11, 2020. The request included an authorization form signed by Plaintiff authorizing OPTUM, INC. to release the records to her counsel.

26. After receiving Plaintiff's counsel's request for medical records, OPTUM, INC. forwarded that request to SCANSTAT TECHNOLOGIES, LLC.

27. On March 12, 2021, SCANSTAT TECHNOLOGIES, LLC sent Plaintiff's counsel an invoice in the amount of $28.90. The invoice included a charge for the copying of 104 pages at a rate of .25¢ per page, as well as $2.90 for shipping charges despite that the records were emailed, and Plaintiff's counsel requested that they be transmitted

electronically. The invoice failed to provide any further details or explanation, such as the clerical costs incurred in locating and making the records available.

28. The first page of the records again stated that the production was made on behalf of HEALTHCARE PARTNERS MEDICAL GROUP. It states: "ATTENTION … HEALTHCARE PARTNERS MEDICAL contracts with ScanSTAT Technologies or one of its affiliates to reproduce exact copies of the original record as specified in the request letter."

29. On March 12, 2021, after receiving the $28.90 invoice, Plaintiff's counsel paid it in full, which Plaintiff is contractually obligated to reimburse at the conclusion of her suit per her retainer agreement with counsel.

## CLASS ACTION ALLEGATIONS

30. With respect to all Defendants, Plaintiff's first proposed Class consists of:

> All adult patients, guardians or conservators of adult patients (or of the adult patient's estate), parents or guardians of minor patients, or personal representatives or heirs of deceased patients, attorneys or law firms who: (1) requested medical records from a medical provider (as defined in California Evidence Code § 1158) located in California; (2) (i) through an attorney at law or his/her representative or (ii) as an attorney at law or through such attorney's representative pursuant to a signed authorization; (3) prior to litigation, and (4) were charged by Defendants more than: (a) ten cents ($0.10) per page for standard reproduction of documents of a size 8½ x 14 inches or less, (b) twenty cents ($0.20) per page for copying of documents from microfilm, (c) $16.00 per hour (computed on the basis of four dollars per quarter hour or fraction thereof) for clerical costs, (d) actual necessary and/or authorized postage charges, and/ or (e) actual costs charged by a third person for the retrieval and return of records held by that third person, from four years prior to the filing of this action.

31. With respect to SCANSTAT TECHNOLOGIES, LLC and DOES 1-20, Plaintiff's second proposed class consists of:

> All persons whose private medical information was disclosed without lawful authorization for purposes other than providing health care services in violation of the Confidentiality of Medical Information Act, California Civil Code §§ 56, et seq., ("CMIA").

32. Excluded from the Classes are: (1) Defendants, any entity in which Defendants have a controlling interest, and their legal representatives, officers, directors, assigns and successors; (2) the judge to whom this case is assigned and any member of the judge's immediate family; (3) counsel for the named class representative and (4) claims for personal injury, wrongful death and emotional distress and claims of consequential property damage and loss.

33. Plaintiff reserves the right to redefine the Classes and to add subclasses as appropriate based on further investigation and discovery.

34. There is a well-defined community of interest in the litigation and the disposition of the claims of these Class Members in a single action will provide substantial benefits to all parties and to the Court.

35. **Numerosity & Ascertainability**: The members of the Class are sufficiently numerous that joinder of all members is impracticable. The membership of the entire Class is presently unknown to Plaintiff. However, the Class is estimated to comprise of thousands of individuals. The identity of such membership is a readily ascertainable set of persons who were overcharged for the retrieval and copying of medical records and/or whose private medical information was disclosed without lawful authorization. Class Members are easily identifiable from records maintained by and in the possession and control of the Defendants or otherwise readily obtained from third parties.

36. **Commonality**: There are questions of law and fact common to the Classes that are answerable on a common basis, and these questions predominate over individual questions. The questions of law and fact common to the Classes include:

37. Whether Defendants' conduct violated Evidence Code § 1158;

38. Whether Defendants' conduct violated California Civil Code §§ 56, et seq.;

39. Whether Defendants' conduct violated Business & Professions Code §§

17200, et seq.;

40. Whether Plaintiffs and the Class are entitled to equitable relief, and, if so, the nature of such relief; and

41. Whether compensatory damages should be awarded to Plaintiff and Class Members.

42. **Typicality:** Plaintiff's claims are typical of the claims of the Classes she seeks to represent. Plaintiff, like all Class Members, was overcharged for the retrieval and copying of her medical records, had her private medical information disclosed without lawful authorization and has suffered injury as a result. The factual bases of Defendants' misconduct are common to all Class Members, and Defendants' actions resulted in injury to all of them. Plaintiff's claims are thereby representative of and co-extensive with the claims of the Classes.

43. **Adequacy**: Plaintiff will fairly and adequately represent the interests of all members of the Classes she seeks to represent. Plaintiff is a member of the Classes she seeks to represent, does not have any conflicts of interest with the Classes, will prosecute the case vigorously on behalf of the Classes, and has already devoted time and resources to the initial investigation of these claims. Further, Plaintiff's counsel is competent and experienced in litigating class actions.

44. **Superiority of Class Action**: A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Because the damages suffered by certain individual members of the Classes may be relatively small, the expense and burden of individual litigation make it impracticable for Class Members to pursue their claims separately. Each member of the Classes has been damaged and is entitled to recovery by reason of Defendants' illegal and unfair practices. Class treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Class treatment will also avoid inconsistent outcomes because the same issues can be adjudicated in the same manner for all members of the Classes.

**FIRST CAUSE OF ACTION**

**VIOLATION OF CALIFORNIA EVIDENCE CODE § 1158**

**(AGAINST ALL DEFENDANTS)**

45. Plaintiff incorporates, by reference, all allegations in the foregoing paragraphs as though fully set forth herein.

46. "Before the filing of any action or the appearance of a defendant in an action, if an attorney at law or his or her representative presents a written authorization therefor signed by an adult patient, by the guardian or conservator of his or her person or estate, or, in the case of a minor, by a parent or guardian of the minor, or by the personal representative or an heir of a deceased patient, or a copy thereof, to a medical provider, the medical provider shall promptly make all of the patient's records under the medical provider's custody or control available for inspection and copying by the attorney at law or his or her representative." Cal. Evid. Code § 1158 (b).

47. "All reasonable costs incurred by a medical provider in making patient records available pursuant to this section may be charged against the attorney who requested the records. 'Reasonable cost,' as used in this section, shall include, but not be limited to, the following specific costs: ten cents ($0.10) per page for standard reproduction of documents of a size 81/2 by 14 inches or less; twenty cents ($0.20) per page for copying of documents from microfilm; actual costs for the reproduction of oversize documents or the reproduction of documents requiring special processing which are made in response to an authorization; reasonable clerical costs incurred in locating and making the records available to be billed at the maximum rate of sixteen dollars ($16) per hour per person, computed on the basis of four dollars ($4) per quarter hour or fraction thereof; actual postage charges; and actual costs, if any, charged to the witness by a third person for the retrieval and return of records held by that third person." Cal. Evid. Code § 1158 (e) (1)-(2).

48. "For purposes of this section, 'medical provider' means physician and surgeon, dentist, registered nurse, dispensing optician, registered physical therapist,

podiatrist, licensed psychologist, osteopathic physician and surgeon, chiropractor, clinical laboratory bioanalyst, clinical laboratory technologist, or pharmacist or pharmacy, duly licensed as such under the laws of the state, or a licensed hospital." Cal. Evid. Code § 1158 (a).

49. Under the ruling of *Thornburg v. Superior Ct.*, 138 Cal.App.4th 43 (2006), California Evidence Code § 1158 is not only applicable to medical providers, as defined in the statute, but others who are connected to medical providers via a contractual relationship, an agency relationship or a civil conspiracy to violate the provisions of Cal. Evid. Code § 1158. "Given section 1158's manifest purpose of limiting the cost of copying, we cannot construe the scope of the statute so narrowly and mechanically that the limitation is easily and effectively avoided by health care providers who attempt to contract away their responsibilities under the statute … Thus, as we interpret the admittedly ambiguous provisions of section 1158, the agents or contractors of entities expressly covered in the first paragraph of the statute may be held liable under the statute but only if (1) they have assumed the duty of responding to section 1158 requests and (2) they are acting for their own advantage and benefit as well as the interests of entities expressly covered by the statute." *Thornburg*, 138 Cal.App.4th at 51 (2006).

50. Defendant OPTUM, INC., which does business as Optum Care, qualifies as a "medical provider" within the meaning of California Evidence Code § 1158 (a) by its own description on its website: "Optum Care is a nationwide family of more than 53,000 dedicated physicians working together to help people live their healthiest lives." https://www.optumcare.com/. "There are some things in life we depend on. Medication is often one of them. We promise to deliver simple ways to get the medication you need." https://www.optumrx.com/public/landing. Thus, Plaintiff is informed and believes that at all times relevant herein, OPTUM, INC. was a collection of more than 53,000 physicians and pharmacists across the United States, including California. Plaintiff is informed and believes that each of these physicians and pharmacists was employed directly by OPTUM, INC. and/or delegated to OPTUM, INC. their responsibility to respond to patient medical

records requests. Plaintiff is informed and believes that at all relevant times herein, OPTUM, INC. retained at least a portion of the revenue generated by the sums charged to patients to obtain their medical records. The delegation of this responsibility has thereby made OPTUM, INC. the agent and/or contractor of these physicians and pharmacists during all relevant times herein. Thus, Plaintiff is informed and believes that at all times relevant herein, OPTUM, INC. has assumed the duty of responding to section 1158 requests on behalf of the above physicians and pharmacists and was acting for its own advantage and benefit as well as the interests of the above physicians and pharmacists.

51. At all times relevant herein, Defendant HEALTHCARE PARTNERS MEDICAL GROUP, P.C. qualified as a "medical provider" within the meaning of California Evidence Code § 1158 (a) because on information and belief, prior to being acquired by OPTUM, INC. in 2019, the more than 53,000 physicians and pharmacists above were directly employed by HEALTHCARE PARTNERS MEDICAL GROUP, P.C., and/or those medical providers delegated the responsibility to respond to patient medical records requests to HEALTHCARE PARTNERS MEDICAL GROUP, P.C. Plaintiff is informed and believes that at all relevant times herein, HEALTHCARE PARTNERS MEDICAL GROUP, P.C. retained at least a portion of the revenue generated by the sums charged to patients to obtain their medical records. The delegation of this responsibility has thereby made HEALTHCARE PARTNERS MEDICAL GROUP, P.C. the agent and/or contractor of these physicians and pharmacists during all relevant times herein. Thus, Plaintiff is informed and believes that at all times relevant herein, HEALTHCARE PARTNERS MEDICAL GROUP, P.C. has assumed the duty of responding to section 1158 requests on behalf of the above physicians and pharmacists and was acting for its own advantage and benefit as well as the interests of the above physicians and pharmacists.

52. Plaintiff is informed and believes that at all times since being acquired by OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C. and OPTUM, INC. have jointly undertaken the duty to respond to the patient medical records requests for records pertaining to the more than 53,000 physicians and pharmacists and have acted

for their own advantage and benefit as well as the interests of the above physicians and pharmacists.

53. At all times relevant herein, Defendant SCANSTAT TECHNOLOGIES, LLC qualified as a "medical provider" within the meaning of California Evidence Code § 1158 (a). Plaintiff is informed and believes that at all times relevant herein, Defendant HEALTHCARE PARTNERS MEDICAL GROUP, P.C. and OPTUM, INC. had a contractual agreement with Defendant SCANSTAT TECHNOLOGIES, LLC whereby SCANSTAT TECHNOLOGIES, LLC agreed to respond to requests for copies of medical records submitted to the above thousands of physicians in California.

54. Plaintiff is informed and believes that at all relevant times herein, SCANSTAT TECHNOLOGIES, LLC retained at least a portion of the revenue generated by the sums charged to patients to obtain their medical records. The delegation of this responsibility has thereby made SCANSTAT TECHNOLOGIES, LLC the agent and/or contractor of these physicians and pharmacists, as well as OPTUM, INC. and HEALTHCARE PARTNERS MEDICAL GROUP, P.C. during all relevant times herein. Thus, Plaintiff is informed and believes that at all times relevant herein, SCANSTAT TECHNOLOGIES, LLC has assumed the duty of responding to section 1158 requests on behalf of the above physicians and pharmacists and was acting for its own advantage and benefit as well as the interests of the above physicians and pharmacists, as well as the interests of OPTUM, INC. and HEALTHCARE PARTNERS MEDICAL GROUP, P.C.

55. Defendants violated Evidence Code § 1158 when they overcharged Plaintiff and Class Members. Defendants illegally charged fees in excess of the .10¢ per page maximum imposed by Evidence Code § 1158 (e) (2) and charged for shipping costs that were not actually necessary and/or incurred.

56. In overcharging for the production of the requested medical records, Defendants OPTUM, INC., HEALTHCARE PARTNERS MEDICAL GROUP, P.C. and SCANSTAT TECHNOLOGIES, LLC were acting on behalf of the originating California medical providers, via a contractual relationship, an agency relationship and/or a civil

conspiracy to violate the provisions of Cal. Evid. Code § 1158.

57. Defendants also violated Evidence Code § 1158 by failing to produce Plaintiff's and Class Members' records within five days of the request.

58. As a direct and proximate result of Defendants' violation of California Evidence Code § 1158, Plaintiff and the Classes have suffered economic harm.

59. Plaintiff, on behalf of herself and all others similarly situated, demands judgment against Defendants for monetary damages, injunctive relief, attorneys' fees, costs and interest.

**SECOND CAUSE OF ACTION**

**VIOLATION OF CIVIL CODE §§ 56, ET SEQ.**

**(AGAINST SCANSTAT TECHNOLOGIES, LLC AND DOES 1-20)**

60. Plaintiff incorporates, by reference, all allegations in the foregoing paragraphs as though fully set forth herein.

61. At all relevant times, SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were providers of health care subject to the requirements of the CMIA, as they were businesses that offer software or hardware to consumers in order to make medical information available at the request of the individual, pursuant to Civil Code § 56.06 (b).

62. At all relevant times, SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were required by the CMIA to protect the confidentiality of Plaintiff's and Class Members' medical information. SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 violated the CMIA by disclosing medical information regarding patients without first obtaining lawful authorization, in violation of Civil Code § 56.10 (a).

63. Because Plaintiff's and Class Members' requests were made prior to litigation, SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were not authorized to disclose the requested medical records pursuant to a court order, or a subpoena or subpoena duces tecum issued by a party to a proceeding under Civil Code § 56.10 (b) (l) or (3). SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were not authorized to disclose the requested records pursuant to Civil Code § 56.10 (b) (7), as Plaintiff's and Class Members'

requests were made by their attorneys, who are not the "patient's representative" for purposes of this sub-section. *See Maher v. Cty. of Alameda*, 223 Cal.App.4th 1340, 1352-53 (2014).

64. SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were not authorized to disclose Plaintiff's or Class Members' medical records pursuant to Civil Code § 56.10 (c) (1) because the records were not disclosed "for purposes of diagnosis or treatment of the patient."

65. Although SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 were authorized to receive Plaintiff's and Class Members' medical information pursuant to Civil Code § 56.10 (c) (3), their disclosure of their further disclosure of that information to third parties, including their lawyers, violated the CMIA because the medical information they received may not be "further disclosed ... in a way that would violate" the CMIA, such as by "shar[ing], sell[ing], us[ing] for marketing, or otherwise us[ing] ... for a purpose not necessary to provide health care services to the patient." Civ. Code § 56.10 (c)-(d).

66. Further, on information and belief, SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 do not respond to attorney requests for records on behalf of their Customers (i.e., the medical service provider from which records were requested), and thus SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 prevent application of the "administrative services" exception for attorney requests. Thus, SCANSTAT TECHNOLOGIES, LLC and DOES 1-20 used the medical records for the purposes of selling the records for more than the law allowed healthcare providers to charge.

67. Plaintiff, on behalf of herself and all others similarly situated, demands injunctive relief to prevent continuing violations of the CMIA, and seeks an award of compensatory and statutory damages, including $1,000 for each violation irrespective of whether Plaintiffs or Class Members suffered actual damages.

**<u>THIRD CAUSE OF ACTION</u>**

**UNFAIR COMPETITION IN VIOLATION OF**

**BUSINESS & PROFESSIONS CODE §§17200, ET SEQ.**

**(AGAINST ALL DEFENDANTS)**

68. Plaintiff incorporates, by reference, all allegations in the foregoing paragraphs as though fully set forth herein.

69. Defendants are "persons" as defined by California Business & Professions Code § 17201.

70. A violation of California Business & Professions Code §§ 17200, et seq. may be predicated on the violation of any state or federal law.

71. Defendants have violated and continue to violate California Business & Professions Code §§ 17200, et seq. by overcharging individuals for retrieval and copying of records in California.

72. Further, SCANSTAT TECHNOLOGIES, LLC has violated and continues to violate California Business & Professions Code §§ 17200, et seq. by disclosing private medical information without lawful authorization.

73. Plaintiff and the Classes have suffered injury in fact and have lost money as a result of Defendants' unlawful business practices. Indeed, they have either already paid the charges themselves, or are obligated to reimburse their counsel for those charges. Plaintiff and the Classes seek to enforce important rights affecting the public interest within the meaning of Code of Civil Procedure § 1021.5.

74. As a direct and proximate result of Defendants' violation of California Business & Professions Code §§ 17200, et seq., Plaintiffs and the Classes have suffered injury in fact and lost money, including paying more for their medical records than allowable under § 1158.

75. As a direct and proximate result of Defendants' unfair business practices, Defendants have reaped unfair benefits and illegal profits at the expense of Plaintiff, the Classes and members of the public.

76. Pursuant to California Business & Professions Code §§ 17200, et seq. Plaintiff and the Classes are entitled to restitution of money paid to Defendants in connection to medical records requests during a period that commences four years prior to the filing of this Complaint; a permanent injunction requiring Defendants to pay all overcharges for copying and retrieval of records to Plaintiff and the Class; and an award of attorneys' fees pursuant to California Code of Civil Procedure § 1021.5 and other applicable laws; and an award of costs.

## PRAYER FOR RELIEF

Plaintiff and the Class pray for relief and judgment against Defendants as follows:

1. For declaratory, injunctive and equitable relief, restitution, disgorgement of profits, monetary damages and all other relief the Court deems appropriate, costs and attorneys' fees in excess of $25,000, exclusive of interest and costs.

2. That this case be certified as a class action;

3. That Plaintiff be appointed as the representative of the Class and any Subclasses;

4. That counsel for Plaintiff be appointed as class counsel.

5. That the Court adjudge, declare and decree that Defendants violated Evidence Code § 1158 by overcharging Plaintiff and the Class for retrieval and copying of records and by failing to provide their records within five days of their request;

6. That the Court adjudge, declare and decree that Defendants violated Civil Code § 56, et seq. by disclosing medical information without lawful authorization for purposes other than providing health care services;

7. Monetary damages, including any compensatory, incidental, nominal, consequential or statutory damages according to proof at trial;

8. That the Court adjudge, declare and decree that the practices engaged in by Defendants as plead herein, including violations of the Evidence Code § 1158, constitute unfair business practices in violation of Business & Professions Code §§ 17200, et seq.;

9. For restitution of overcharges for retrieval and copying of records to Plaintiff

and all Class Members;

10. An order requiring Defendants to immediately cease their wrongful conduct as set forth above, as well as enjoining Defendants from continuing to overcharge individuals via the unlawful and unfair business acts and practices complained of herein;

11. For the appointment of a receiver to receive, manage and distribute any and all funds disgorged from Defendants and determined to have been wrongfully acquired by Defendants as a result of violations of California Business & Professions Code sections 17200, et seq.;

12. A declaration that Defendants are financially responsible for notifying all Class members of the pendency of this action;

13. For prejudgment interest from the day such amounts were due and payable;

14. For attorneys' fees pursuant to California Code of Civil Procedure § 1021.5, or as otherwise provided by law; and

15. For such other relief that the Court deems just and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff and the Class Members hereby demand a trial by jury on all issues.

**PIMENTEL LAW, P.C.**

Dated: August 19, 2021

By: */s/ Bruce T. Murray*
Gabriel J. Pimentel, Esq.
Bruce T. Murray, Esq.
Attorneys for Plaintiff and putative class