**PIMENTEL LAW, P.C.**
Bruce T. Murray, Esq. (SBN 306504)
BTM@PimentelLaw.com
Gabriel J. Pimentel, Esq. (SBN 265328)
GJP@PimentelLaw.com
30 N. Raymond Avenue, Suite 210
Pasadena, CA 91103
Telephone: (626) 765-6505
Fax: (626) 628-3041

Attorneys for Plaintiff and Putative Class,
NANA AKUA SERWAAH ODDEI

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

NANA AKUA SERWAAH ODDEI, an individual, on behalf of all others similarly situated,

Plaintiff,

vs.

SCANSTAT TECHNOLOGIES, LLC, and DOES 1-20 inclusive,

Defendants.

Case No. 2-21-cv-03974

**PLAINTIFF'S OPPOSITION TO DEFENDANT SCANSTAT'S MOTION TO FOR JUDGMENT ON THE PLEADINGS RE PLAINTIFF'S FIRST AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: December 10, 2021
Time: 8:30 a.m.
Courtroom: 6C
Judge: Hon. Stanley Blumenfeld, Jr.

Action Filed: March 22, 2021
Removal filed: May 11, 2021
Trial Date: None set

## Table of Contents

I. INTRODUCTION .......... - 1 -

II. ARGUMENT .......... - 4 -

**a. Rule 12(c) Pleading Standard** .......... - 4 -

**b. ScanSTAT Is A 'Provider of Health Care' Under the CMIA (California Civil Code § 56.06 (a))** .......... - 5 -

**c. Plaintiff's FAC Sufficiently Pleads that ScanSTAT is a "Business that Offers Hardware or Software to Consumers" and thus is a "Provider of Healthcare" Under Cal. Civ. Code § 56.06 (b)** .......... - 6 -

**d. ScanSTAT is a "Contractor" Subject to CMIA** .......... - 7 -

**e. Even if Plaintiff's FAC Failed to Sufficiently Plead all Facts Necessary to Maintain the CMIA Claim, Such Defect Could be Cured by Amendment** .......... - 7 -

**f. The CMIA Applies to ScanSTAT Whether or Not Optum, Inc. or HealthCare Partners Are Medical Providers** .......... - 8 -

**g. Plaintiff Did Not Authorize ScanSTAT to Disclose Her Information** .......... - 9 -

**h. ScanSTAT's Disclosure of Plaintiff's Medical Information Was Not Authorized Under Any of California Civil Code § 56.10 (b)'s Exceptions** .......... - 10 -

**i. ScanSTAT's Unauthorized Disclosure of Plaintiff's Medical Information is Not Excepted by California Civil Code § 56.10 (d)** .......... - 13 -

**j. Plaintiff is Not Barred from Recovering Statutory Damages Under the CMIA** .......... - 13 -

III. CONCLUSION .......... - 14 -

## Table of Authorities

### Cases

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .......... - 5 -

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (1955) .......... - 4 -

*Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047 (9th Cir. 2011) .......... - 4 -

*Freeman v. ABC Legal Services, Inc.*, 877 F. Supp. 2d 919 (N.D. Cal. 2012) .......... - 4 -

*Regents of University of California v. Superior Court*, 220 Cal.App.4th 549 (2013) ...- 14 -

### Statutes

45 C.F.R. § 164.508 .......... - 14 -

Cal. Evid. Code § 1158 .......... - 9 -, - 13 -, - 14 -

Cal. Health & Saf. Code § 123105 .......... - 13 -

California Civil Code § 56.05 .......... - 1 -, - 7 -

California Civil Code § 56.06 .......... - 5 -, - 6 -, - 7 -, - 14 -

California Civil Code § 56.10 .......... passim

Fed. R. Civ. P. 12(c) .......... - 4 -

# MEMORANDUM OF POINTS & AUTHORITIES

## I. INTRODUCTION

ScanSTAT claims that the CMIA does not apply to it because it is not a "provider of healthcare" or "contractor" within the meaning of the statute. Both assertions are wrong. Indeed, ScanSTAT is not only a "contractor" under the definition of California Civil Code § 56.05 (d), but also a "provider of healthcare" as defined by California Civil Code §56.06 (a).

ScanSTAT further claims that even if it fell within CMIA's definition of "provider of healthcare" or "contractor," it was nevertheless authorized to disclose Plaintiff's medical records to her counsel because it physically obtained possession of an authorization form that her counsel provided to Optum, Inc. But consent and authorization are not transferrable. The fact that ScanSTAT may have physically obtained possession of the authorization form that Plaintiff provided to Optum, Inc. does not mean that ScanSTAT was authorized to disclose her medical information. Here, Plaintiff authorized Optum, Inc., not ScanSTAT, to disclose that information.

ScanSTAT also claims that for it to meet the definition of "contractor" under California Civil Code § 56.05 (d), Plaintiff must additionally show that ScanSTAT <u>contracted with</u> a "provider of healthcare." ScanSTAT then concludes that because Optum, Inc. and HealthCare Partners Medical Group, P.C. are not "providers of healthcare," that it necessarily could not have <u>contracted with</u> a "provider of healthcare," and therefore does not meet the definition of "contractor" under California Civil Code § 56.05 (d). But California Civil Code § 56.05 (d) does not have any such requirement. This "contracted with" requirement is something that ScanSTAT simply wrote into the statute.

ScanSTAT further claims that it is not subject to the CMIA because "the FAC contains no facts to show that it provides 'software or hardware to consumers' …." and therefore "does not fall within Civil Code § 56.06(b)." However, Plaintiff need not prove that ScanSTAT provides software or hardware to consumers to show that it is a

"provider of healthcare" under the CMIA. Under Civil Code § 56.06 (a), ScanSTAT is deemed to be a "provider of healthcare" if it is "organized for the purpose of maintaining medical information … in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis and treatment of the individual …." CAL. CIV. CODE § 56.06 (a). Thus, it is irrelevant whether Plaintiff ultimately shows that ScanSTAT provides software or hardware to consumers under Civil Code § 56.06 (b) because it fits the definition of "provider of healthcare" under Civil Code § 56.06 (a).

ScanSTAT further argues that Plaintiff's FAC failed to allege that it is a "provider of healthcare" under Civil Code § 56.06 (a) ("a business organized for the purpose of maintaining medical information"), and that she could not make any such argument anyway because she has previously alleged that it is a copy service. First, nowhere in Plaintiff's FAC or Opposition to ScanSTAT's Rule 12 (b) Motion to Dismiss does Plaintiff characterize ScanSTAT as a copy service. This is something that ScanSTAT's counsel simply contrived. Second, even if Plaintiff had characterized ScanSTAT as a copy service (which she did not), that would not preclude it from also being a "business organized for the purpose of maintaining medical information" under Civil Code § 56.06 (a). Further, ¶ 61 of the FAC pleads that ScanSTAT was a "provider of healthcare subject to the requirements of the CMIA …." If the Court requires that Plaintiff elaborate that ScanSTAT fits the definition of "a business organized for the purpose of maintaining medical information" under Civil Code § 56.06 (a), she can do so by way of a Second Amended Complaint.

ScanSTAT additionally claims that even if it were subject to the CMIA, it was nevertheless authorized to disclose Plaintiff's medical information to her "expressly designated agent" pursuant to Civil Code § 56.10 (b) (3), (b) (7), (b) (9) and (c) (14). First, the CMIA does not authorize disclosure of medical information to a patient's so called "expressly designated agent." Rather, it only contemplates disclosure of such

information to the patient or the "patient's representative." Here, Pimentel Law, P.C. does not fit the definition of "patient" or "patient's representative" under the CMIA. Indeed, Civil Code § 56.10 (b) (7) defines "patient's representative" as "(1) a parent or guardian of a minor who is a patient, (2) the guardian or conservator of the person of an adult patient, (3) an agent as defined in Section 4607 of the Probate Code[1] … [or] (4) the beneficiary as defined in Section 24 of the Probate Code or personal representative as defined in Section 58 of the Probate Code, of a deceased patient." CAL. HEALTH & SAF. CODE § 123105 (e) (1)-(4). Because none of these definitions apply to Pimentel Law, P.C., it was not Plaintiff's "personal representative" for purposes of the CMIA. Second, ScanSTAT's disclosure of Plaintiff's medical information was not authorized by Civil Code § 56.10 (b) (3), (b) (7), (b) (9) or (c) (14), as is explained in more detail below.

ScanSTAT further argues that the FAC contains no facts to show that it disclosed Plaintiff's medical information "with the intent to 'share, sell, use for marketing, or otherwise use medical information for a purpose not necessary to provide healthcare services to the patient', and thus shows no violation of Civ. Code § 56.10 (d)." Not so. ¶ 65 of the FAC alleges that ScanSTAT's "disclosure of that information to third parties, including their lawyers, violated the CMIA because the medical information they received may not be 'further disclosed ... in a way that would violate' the CMIA, such as by 'shar[ing], sell[ing], us[ing] for marketing, or otherwise us[ing] ... for a purpose not necessary to provide health care services to the patient.' Civ. Code § 56.10 (c)-(d)." (FAC ¶ 65). Although not explicitly stated, Plaintiff's counsel's request for records was not for the purpose of providing health care services to her. Rather, it was for purposes of litigation. The context of the FAC makes that fact clear. However, if the Court requires that Plaintiff state this explicitly, Plaintiff can amend to state the obvious.

---

[1] "'Agent' means an individual designated in a power of attorney for health care to make a health care decision for the principal, regardless of whether the person is known as an agent or attorney-in-fact, or by some other term." CAL. PROB. CODE § 4607 (a).

Lastly, ScanSTAT argues that Plaintiff has not and cannot allege that her information was "improperly viewed or otherwise accessed" because the information was disclosed to her own counsel and "designated agent." However, Civil Code § 56.10 contains no requirement that the information be "improperly viewed or otherwise accessed." This is something that ScanSTAT's counsel has simply written into the statute. Indeed, Civil Code § 56.10 (a) prohibits "providers of healthcare" and "contractors" from "disclosing" a patient's medical information. It says nothing about a further requirement that the information be "improperly viewed or otherwise accessed." Here, because the FAC pleads that ScanSTAT is a "provider of healthcare" and/or "contractor," and disclosed Plaintiff's medical information without her authorization, Plaintiff has plead sufficient facts to state a CMIA claim for statutory damages against ScanSTAT.

## II. ARGUMENT

### a. Rule 12(c) Pleading Standard

"Under Rule 12(c), 'a party may move for judgment on the pleadings' after the pleadings are closed 'but early enough not to delay trial.' Fed.R.Civ.P. 12(c). A Rule 12(c) motion is 'functionally identical' to a Rule 12(b)(6) motion to dismiss for failure to state a claim, and therefore the same legal standard applies. *Cafasso v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 n. 4 (9th Cir. 2011). *Freeman v. ABC Legal Services, Inc.*, 877 F. Supp. 2d 919, 922 (N.D. Cal. 2012).

"Under Federal Rule of Civil Procedure 8(a)(2), a complaint must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' 'Detailed factual allegations' are not required, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (1955), but the Rule does call for sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,' *id.*, at 570, 127 S.Ct. 1955. A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at

556, 127 S.Ct. 1955. Two working principles underlie *Twombly*. First, the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements. *Id.*, at 555, 127 S.Ct. 1955. Second, determining whether a complaint states a plausible claim is context-specific, requiring the reviewing court to draw on its experience and common sense. *Id.*, at 556, 127 S.Ct. 1955. A court considering a motion to dismiss may begin by identifying allegations that, because they are mere conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 663-64 (2009).

**b. ScanSTAT Is A 'Provider of Health Care' Under the CMIA (California Civil Code § 56.06 (a))**

ScanSTAT denies that it is a "provider of healthcare" as defined by California Civil Code § 56.05. However, what its counsel conveniently omits is that under California Civil Code § 56.06 (a), ScanSTAT is deemed to be a "provider of healthcare" under the CMIA. Indeed, the statute reads, "any business organized for the purpose of maintaining medical information, as defined in subdivision (j) of Section 56.05, in order to make the information available to an individual or to a provider of health care at the request of the individual or a provider of health care, for purposes of allowing the individual to manage his or her information, or for the diagnosis and treatment of the individual, shall be deemed to be a provider of health care subject to the requirements of this part." CAL. CIV. CODE § 56.06 (a). (Emphasis added.)

This is precisely how paragraphs 19-29 of the FAC describe ScanSTAT; as a business that maintains medical information in order to make such information available to individuals or their providers of health care at their request. At this point in its brief, ScanSTAT begins to propagate a fictional narrative that Plaintiff's FAC

"judicially admits that ScanSTAT provides copy services. (FAC ¶¶ 9, 14, 21, 23, 27, 28, 53.)", thereby precluding Plaintiff from alleging that it is a "business organized for the purpose of maintaining medical information." This is pure fantasy. Nowhere in Plaintiff's FAC, including ¶¶ 9, 14, 21, 23, 27, 28, 53, does Plaintiff allege that ScanSTAT is a copy service. Further, even if Plaintiff had made such an allegation (which she did not), it is not clear how that allegation would prevent Plaintiff from also asserting that ScanSTAT is a "business organized for the purpose of maintaining medical information" as defined by California Civil Code § 56.06 (a). Indeed, being a copy service (which Plaintiff never alleged) and a "business organized for the purpose of maintaining medical information" are not mutually exclusive. Both can be true. Proving one does not disprove the truth of the other.

**c. Plaintiff's FAC Sufficiently Pleads that ScanSTAT is a "Business that Offers Hardware or Software to Consumers" and thus is a "Provider of Healthcare" Under Cal. Civ. Code § 56.06 (b)**

Defendant claims that the FAC fails to sufficiently plead that ScanSTAT is a "business that offers hardware or software to consumers" and thus is a "provider of healthcare" under California Civil Code § 56.06 (b). However, ¶¶ 19-29 of the FAC plead various facts supporting Plaintiff's conclusion that ScanSTAT offers hardware or software to consumers in order to make the patient's health information available to them or their provider of health care for purposes of allowing the individual to manage his or her information. Indeed, in order to request records from ScanSTAT, one must do so on its website, involves hardware and software.

ScanSTAT again propagates its fictional narrative that ¶¶ 9, 14, 21, 27 and 53 of the FAC "judicially admit" that it is a "copy service," thereby precluding Plaintiff from alleging that it is a "business that offers hardware or software to consumers." Again, this is pure fantasy. The FAC does not allege that ScanSTAT is a copy service. And even if it did, both things can be true; that ScanSTAT is a "business that offers hardware or software to consumers" and is also a copy service.

**d. ScanSTAT is a "Contractor" Subject to CMIA**

ScanSTAT claims that it is not subject to the CMIA because it is not a "contractor" for a "provider of health care."

"A provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization." Cal. Civ. Code § 56.10(a). "'Contractor' means any person or entity that is a medical group, independent practice association, pharmaceutical benefits manager, or a medical service organization and is not a health care service plan or provider of health care." CAL. CIV. CODE § 56.05 (d).

ScanSTAT claims that in order to meet the definition of "contractor" under the CMIA, the entity must "contract for a provider of healthcare." (Mot. at 14). However, ScanSTAT's counsel is rewriting the statute. Nowhere in California Civil Code § 56.05 (d) does it impose a requirement that the entity "contract for a provider of healthcare." Thus, under the plain wording of the statute, CMIA applies to ScanSTAT regardless of whether the entity with whom it contracted with was a "provider of healthcare."

**e. Even if Plaintiff's FAC Failed to Sufficiently Plead all Facts Necessary to Maintain the CMIA Claim, Such Defect Could be Cured by Amendment**

ScanSTAT claims that the alleged defects in Plaintiff's FAC are "incapable of cure" in part because Plaintiff has allegedly judicially admitted that it is a copy service, as opposed to a "business that offers hardware or software to consumers." As discussed above, this argument is based on a misrepresentation of Plaintiff's FAC. And even if the FAC had "judicially admitted" that ScanSTAT was a copy service (which it does not), such an allegation does not foreclose the possibility that it is also a "business that offers hardware or software to consumers." Both could be true.

Fixated on its misguided belief that entities that provide copy services cannot be liable under the CMIA, ScanSTAT argues that the records submitted in its Request for

Judicial Notice reflect that it provided copy services to Plaintiff, as opposed to any other service for which she would have standing. However, ScanSTAT never explains why. Indeed, it is not clear how the documents submitted in its Request for Judicial Notice show that ScanSTAT is a copy service, as opposed to a "business organized for the purpose of maintaining medical information" or a "business that offers hardware or software to consumers." And even if the documents showed this, ScanSTAT never articulate how that would foreclose Plaintiff from also showing that it was a "business organized for the purpose of maintaining medical information" or a "business that offers hardware or software to consumers."

ScanSTAT further argues that Plaintiff's CMIA claim is based upon the disclosure of her medical records copies, as opposed to "the provision of software, hardware, or medical information maintenance services." It is not entirely clear what is meant by this sentence. However, Plaintiff's CMIA claim is predicated on ScanSTAT's unauthorized disclosure of Plaintiff's medical information. As a "business organized for the purpose of maintaining medical information" and "business that offers hardware or software to consumers," ScanSTAT is prohibited under the CMIA from making such unauthorized disclosure.

**f. The CMIA Applies to ScanSTAT Whether or Not Optum, Inc. or HealthCare Partners Are Medical Providers**

ScanSTAT claims that because Optum, Inc. and Healthcare Partners Medical Group, P.C. are not medical providers under the Evidence Code, it did not contract with a "medical provider" to provide medical records, and the CMIA therefore does not apply to it. ScanSTAT's syllogism can be boiled down as follows: *If* Optum, Inc. and Healthcare Partners Medical Group, P.C. are not determined to be medical providers under Cal. Evid. Code § 1158, *then* ScanSTAT cannot be considered a contractor under the CMIA, *and* therefore it has no obligation to comply with the CMIA.

The syllogism fails logically and legally because ScanSTAT's liability under the CMIA is not derivative of Optum, Inc. or Healthcare Partners Medical Group, P.C.'s

liability under CEC § 1158. Indeed, whether the entities from which ScanSTAT obtained the confidential medical information were "medical providers" within the meaning of CEC § 1158 is totally irrelevant to ScanSTAT's liability under the CMIA. Under the CMIA, Plaintiff need only prove that ScanSTAT disclosed her medical information without her authorization.

**g. Plaintiff Did Not Authorize ScanSTAT to Disclose Her Information**

Plaintiff's FAC alleges that ScanSTAT violated the CMIA by disclosing Plaintiff's and class members' medical information without first obtaining lawful authorization, contrary to Civil Code § 56.10, i.e., "A provider of health care, health care service plan, or contractor shall not disclose medical information regarding a patient of the provider of health care or an enrollee or subscriber of a health care service plan without first obtaining an authorization." CAL. CIV. CODE § 56.10(a).

Defendant denies it violated this law – first by misreading the law and then by misstating the purpose of Plaintiff's counsel's request for records. "Even if, *arguendo*, CMIA applied to ScanSTAT (which it does not), it remains that ScanSTAT did not violate these subsections of Section 56.10, because it received Plaintiff's signed authorization forms, delivered by her legal 'representative', preparatory to her civil lawsuit, and ScanSTAT complied with such request by delivering the records to her counsel of record as she expressly directed." (Mot. at 15).

First, the law says nothing about receiving possession of an authorization form; the law requires that the provider of healthcare or contractor obtain authorization; and if they fail to do so, then they may not disclose a patient's medical information. Here, Plaintiff Nana Akua Serwaah Oddei did not provide ScanSTAT with any authorization to disclose her medical information, contrary to Defendant's misleading suggestion. The fact that ScanSTAT may have physically obtained the authorization form that Plaintiff provided to Optum does not mean that it "obtained" her authorization to disclose her medical information.

Here, Plaintiff authorized Optum, Inc., not ScanSTAT, to provide her medical

records. As the Complaint alleges, Optum gave a copy of Plaintiff's authorization form to ScanSTAT. However, authorization/consent is not transferrable. Thus, pursuant to California Civil Code § 56.10, ScanSTAT was not authorized to disclose Plaintiff's medical information to anyone, including her counsel, because she did not authorize ScanSTAT to do so. Defendant may not like the law and might think it is inconvenient, but that does not relieve it of its obligation to comply with it.

**h. ScanSTAT's Disclosure of Plaintiff's Medical Information Was Not Authorized Under Any of California Civil Code § 56.10 (b)'s Exceptions**

Civil Code § 56.10 (b) contains nine exceptions to CMIA's prohibition on the disclosure of medical information. Defendant quotes four of them and claims that all apply. They don't. None of them.

California Civil Code § 56.10 (b) (3) provides:

> "A provider of health care, a health care service plan, or a contractor shall disclose medical information if the disclosure is compelled … (3) by a party to a proceeding before a court or administrative agency pursuant to a subpoena, subpoena duces tecum, notice to appear served pursuant to Section 1987 of the Code of Civil Procedure, or any provision authorizing discovery in a proceeding before a court or administrative agency." CAL. CIV. CODE § 56.10 (b) (3).

Based on this exception, Defendant argues that the disclosure was authorized "because they were requested by Plaintiff and released to her counsel who was hired for the purposes of representing a party (Plaintiff) in a proceeding before a court, i.e., the filing Plaintiff's personal injury civil lawsuit relative to the motor vehicle collision (see, FAC ¶¶ 18 (alleging that Plaintiff's counsel was hired 'to represent her in a suit for personal injuries')." (Mot. at 17).

However, this reasoning is invalid and this exception does not apply because Plaintiff was not a party to any lawsuit at the time her counsel made the request. Indeed, this exception only applies when the request is made pursuant to a subpoena or other authorized discovery proceeding by a party to a litigation. Recognizing that this exception only applies in this context, ScanSTAT's counsel attempts to shoehorn the facts into this inapplicable exception by arguing that "Plaintiff, by and through her counsel (Pimentel Law, P.C.) represented herself to ScanSTAT as a party to a civil proceeding" by virtue of including the words "Nana Serwaah Oddei v. Donato Montiel" and claim # in the subject line of the request for medical records. First, including then name of the claim and claim # does not show that Plaintiff "represented herself to ScanSTAT as a party to a civil proceeding." Further, even if ScanSTAT believed that Plaintiff was a party to a litigation at the time it received Plaintiff's authorization form from Optum, it does not change the fact that the request was not made pursuant to a subpoena or other authorized discovery proceeding. As such, California Civil Code § 56.10 (b) (3) did not authorize ScanSTAT to disclose Plaintiff's medical information.

California Civil Code § 56.10 (b) (7) provides:

> "A provider of health care, a health care service plan, or a contractor shall disclose medical information if the disclosure is compelled … (7) by the patient or the patient's representative pursuant to Chapter 1 (commencing with Section 123100) of Part 1 of Division 106 of the Health and Safety Code." CAL. CIV. CODE § 56.10 (b) (7).

Defendant insists that it was authorized to disclose Plaintiff's medical information to Plaintiff's "legal representative" pursuant to California Civil Code § 56.10 (b) (7), and that it therefore did not violate the CMIA. However, § 56.10 (b) (7) does not authorize disclosure to a patient's "legal representative." Rather, it only authorizes disclosure to the patient or "patient's representative." Plaintiff's counsel does not fit the definition of either.

Indeed, § 56.10 (b) (7) defines "patients' representative" as:

(1) A parent or guardian of a minor who is a patient.

(2) The guardian or conservator of the person of an adult patient.

(3) An agent as defined in Section 4607 of the Probate Code …[2]

(4) The beneficiary as defined in Section 24 of the Probate Code or personal representative as defined in Section 58 of the Probate Code, of a deceased patient.

CAL. HEALTH & SAF. CODE § 123105 (e).

Notably absent from these definitions is the patient's attorney, as was the case here. ScanSTAT's counsel omits this critical definition, and substitutes its own wording, "legal representative," for the statutory wording and definition of "patient's representative." This omission only underscores it acknowledgment of the lack of merit to its argument that § 56.10 (b) (7) authorized it to disclose Plaintiff's medical information.

California Civil Code § 56.10 (b) (9) provides:

> "A provider of health care, a health care service plan, or a contractor shall disclose medical information … (9) when otherwise specifically required by law." CAL. CIV. CODE § 56.10 (b) (9).

In attempting to apply this exception to itself, Defendant states, "Plaintiff herself alleges that the disclosure of the records was required by law to have been delivered within five days of the request. (FAC ¶ 57, citing Evid. Code § 1158.) Further, Plaintiff authorized the disclosure of her medical records to 'Bruce T. Murray, Attorney' of the Pimentel Law firm as her representative under federal law, specifically, '45 C.F.R. § 164.508 (c)(1)(iv).' As such, based on Plaintiff's FAC allegations, the alleged

---

[2] "'Agent' means an individual designated in a power of attorney for health care to make a health care decision for the principal, regardless of whether the person is known as an agent or attorney-in-fact, or by some other term." CAL. PROB. CODE § 4607 (a).

disclosure of records was authorized under Civ. Code § 56.06 (b) (9)."

§ 56.10 (b) (9) does not apply here because Plaintiff's counsel never asked ScanSTAT to disclose any information to her counsel. Rather, the request was made to Optum. As such, it was Optum, not ScanSTAT, who was required by Evidence Code § 1158 (b) to have produced Plaintiff's records within five days.

Based on the foregoing, because none of California Civil Code § 56.10 (b)'s exceptions apply to ScanSTAT, its disclosure of Plaintiff's medical information was not authorized.

**i. ScanSTAT's Unauthorized Disclosure of Plaintiff's Medical Information is Not Excepted by California Civil Code § 56.10 (d)**

ScanSTAT argues that "Section 56.10(d) expressly *excludes* from its scope the use of medical records that is 'expressly authorized by a patient, enrollee, or subscriber'". It then concludes that because "Plaintiff plainly and indisputably authorized – and in fact requested – the disclosure of her medical records", its disclosure of Plaintiff's medical information was authorized by § 56.10 (d). However, for the same reasons discussed above, Plaintiff never authorized ScanSTAT to disclose her medical information to anyone. As such, the fact that ScanSTAT surreptitiously obtained a physical copy of Plaintiff's authorization form from Optum does not constitute authorization or consent to disclose Plaintiff's medical information.

**j. Plaintiff is Not Barred from Recovering Statutory Damages Under the CMIA**

ScanSTAT claims that because Plaintiff's FAC does not allege that "her medical information was improperly viewed or otherwise accessed by an unauthorized individual, she cannot state claim for statutory damages under the CMIA as a matter of law." This is not the law. Nowhere in the CMIA does it impose a requirement that the medical information be "improperly viewed" or accessed by an "unauthorized individual" in order to recover statutory damages. This is something that ScanSTAT's counsel simply made up to bolster a weak argument. Rather, the law requires that the

medical information be "disclosed" without authorization. Further, even if the CMIA required that the disclosed information be "accessed by an unauthorized individual," this requirement is satisfied because the information was disclosed to someone other than the "patient's representative" in violation of Civil Code § 56.10 (b) (7). Based on the foregoing, Plaintiff is not barred from recovering statutory damages under her CMIA claim.

Defendant misstates Plaintiff's pleaded-for remedy by extensively quoting the non-analogous case, *Regents of University of California v. Superior Court*, 220 Cal.App.4th 549 (2013). However, that case involved the negligent maintenance of medical information under CMIA section 56.101 – totally inapplicable and unalleged here. In contrast, Plaintiff's FAC alleges unauthorized disclosure of medical information. Defendant's featured case is inapposite.

## III. CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that the Court deny Defendants' Motion for Judgment on the Pleadings.

**PIMENTEL LAW, P.C.**

Dated: November 19, 2021

By: */s/ Bruce T. Murray*
Bruce T. Murray, Esq.
Attorney for Plaintiff