**PIMENTEL LAW, P.C.**
Gabriel J. Pimentel, Esq. (SBN 265328)
GJP@PimentelLaw.com
Bruce T. Murray, Esq. (SBN 306504)
BTM@PimentelLaw.com
30 N. Raymond Avenue, Suite 210
Pasadena, CA 91103
Telephone: (626) 765-6505
Fax: (626) 628-3041
Attorneys for Plaintiff and Putative Class

**GORDON REES SCULLY MANSUKHANI, LLP**
KIMBERLY D. HOWATT (SBN: 196921)
khowatt@grsm.com
TIMOTHY A. HANNA (SBN: 310620)
thanna@grsm.com
633 West Fifth Street, 52nd Floor
Los Angeles, CA 90071
Telephone: (213) 576-5000
Facsimile: (213) 680-4470
Attorneys for Defendant ScanSTAT Technologies, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| NANA AKUA SERWAAH ODDEI, an individual, on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>OPTUM, INC., DAVITA MEDICAL GROUP CALIFORNIA, P.C., HEALTHCARE PARTNERS MEDICAL GROUP, P.C., SCANSTAT TECHNOLOGIES, LLC, and DOES 1-20 inclusive,<br><br>Defendants. | Case No. 2-21-cv-03974<br><br>**JOINT REPORT PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 26(f)**<br><br>Scheduling Conference<br>Date: December 10, 2021<br>Time: 8:30 a.m.<br>Dept.: Courtroom 6C<br>Judge: Hon. Stanley Blumenfeld, Jr.<br><br>Original Complaint Filed: March 22, 2021<br>Removal: May 12, 2021<br>Original Resp. Pleading: June 17, 2021 |

(filed)
Pending Resp. Pleading: Nov. 1, 2021 (filed); December 20, 2021 (hearing)
MSC: December 10, 2021
Proposed Trial Date: January 24, 2023

## JOINT RULE 26(f) REPORT

Pursuant to the Federal Rules of Civil Procedure 16 and 26(f), Local Rule 26-1, and this Court's May 13, 2021 Mandatory Scheduling Conference (MSC) Order (Dkt. 8), Plaintiff Nana Akua Serwaah Oddei ("Plaintiff") and Defendant ScanSTAT Technologies, LLC ("Defendant" or "ScanSTAT", and together with Plaintiff, the "Parties"), through their respective undersigned counsel of record, hereby jointly submit this Rule 26(f) report after having met and conferred telephonically on November 11, 2021, relating to the issues contemplated in Rule 16, Rule 26(f), Local Rule 26-1, and the Court's Scheduling Order.

**1. Basis for Court's Subject Matter Jurisdiction:**

On March 22, 2021, Plaintiff filed her initial class action complaint in the Los Angeles Superior Court, and on May 12, 2021, Defendants Optum, Inc., HealthCare Partners Medical Group, P.C. (collectively, the "Optum Defendants") filed their Notice of Removal to Federal Court. Plaintiff filed a motion for remand, which was denied.

Plaintiff Nana Akua Serwaah Oddei filed this class action complaint on March 22, 2021 in the Los Angeles Superior Court. On May 11, 2021, Optum removed this case pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453, contending that (i) the aggregate number of putative class members is alleged to be 100 or greater; (ii) diversity of citizenship exists between one or more class member and one or more Defendants; and (iii) the amount placed in controversy by the Complaint exceeds, in the aggregate, $5 million, exclusive of interest and costs. (Dkt. 1.)

Defendant maintains that this Court has subject matter jurisdiction over this matter under CAFA as outlined in the Optum Defendants' Notice of Removal. First,

Plaintiff's FAC alleges that the class is comprised of "thousands" of individuals. (Dkt. No. 35, ¶ 35.) Second, minimal diversity is met because Plaintiff is a citizen of California, and both the Optum Defendants (now dismissed; with Plaintiff's appeal pending (Dkt. No. 47)) and ScanSTAT are not citizens of California. (Dkt. No. 35, ¶¶ 4, 7-9, and Caption.) Also, based on Plaintiff's allegations that the class is thousands of individuals, and reasonably assuming that each Class Member may seek damages in approximately the same amount as Plaintiff, Plaintiff has put at least $5,000,000 in controversy. (*See*, Dkt. No. 1, ¶¶ 12-19; Dkt. No. 35, ¶ 67 (seeking at least $1,000 per putative class member) and p. 17, ¶ 14 (seeking attorneys' fees).)

**2. Statement of the Case**:

**a. Plaintiff's statement**:

This is a class action complaint brought by Plaintiff Nana Akua Serwaah Oddei on behalf of herself and all others similarly situated – namely, all persons who were unlawfully overcharged for retrieval and copying of medical records, in violation of California Evidence Code § 1158. Additionally, Plaintiff brings this action on behalf of all persons whose private medical information was disclosed without lawful authorization for purposes other than providing health care services in violation of the Confidentiality of Medical Information Act, California Civil Code § 56, et seq., ("CMIA").

On August 20, 2020, Mrs. Oddei was involved in a motor vehicle collision. From August 24, 2020 to October 11, 2020, she received treatment at Optum, Inc. and Optum-affiliated medical providers for various injuries related to the collision. During that time, Mrs. Oddei retained counsel to represent her in a suit for personal injuries against the driver of the automobile that struck her.

On September 22, 2020, Plaintiff's counsel's office requested all medical records pertaining to treatment rendered to Plaintiff at Optum, Inc. medical providers. The request included an authorization form signed by Plaintiff authorizing Optum, Inc. to release the records to her counsel. After receiving the request for medical records,

Optum, Inc. forwarded that request to ScanSTAT Technologies, LLC.

On October 11, 2020, ScanSTAT Technologies, LLC, sent Plaintiff's counsel an invoice in the amount of $10.40. The invoice included a charge for the copying of 30 pages at a rate of .25¢ per page, as well as $2.90 for shipping charges despite that the records were faxed. The invoice failed to provide any further details or explanation, such as the clerical costs incurred in locating and making the records available. The bill was paid and ScanSTAT Technologies, LLC, without Plaintiff's authorization or consent, released her medical records to Plaintiff's counsel.

After October 11, 2020, Ms. Oddei continued to receive treatment at Optum, Inc. and its affiliated medical providers, which included treatment related to her auto accident. On March 2, 2021, Plaintiff's counsel submitted a supplemental request for all medical records pertaining to treatment rendered to Plaintiff at Optum, Inc. medical providers encompassing the time period after October 11, 2020. The request included an authorization form signed by Plaintiff authorizing Optum, Inc. to release the records to her counsel.

After receiving Plaintiff's counsel's request for medical records, Optum, Inc. forwarded that request to ScanSTAT Technologies, LLC. On March 12, 2021, ScanSTAT Technologies, LLC sent Plaintiff's counsel an invoice in the amount of $28.90. The invoice included a charge for the copying of 104 pages at a rate of .25¢ per page, as well as $2.90 for shipping charges despite that the records were emailed, and Plaintiff's counsel requested that they be transmitted electronically. The invoice failed to provide any further details or explanation, such as the clerical costs incurred in locating and making the records available. On March 12, 2021, after receiving the $28.90 invoice, Plaintiff's counsel paid it in full and ScanSTAT Technologies, LLC, without Plaintiff's authorization or consent, released her medical records to Plaintiff's counsel.

On March 22, 2021, Ms. Oddei brought a class action lawsuit in the Los Angeles Superior Court.

**b. Defendant's statement**:

Following this Court's order dismissing the First and Third Causes of Action against all defendants (Dkt. No. 46) upon their respective Rule 12(b)(6) motions to dismiss, the sole remaining claim in the First Amended Complaint ("FAC") is the Second Cause of Action against ScanSTAT under the Confidentiality in Medical Information Act ("CMIA"; codified at Cal. Civ. Code §§ 56, et seq.).

On November 1, 2021, ScanSTAT filed a Rule 12(c) motion for judgment on the pleadings, namely seeking dismissal of the CMIA count, which is scheduled for hearing on December 10, 2021. (Dkt. No. 52.) By such motion, ScanSTAT asserts that the Second Cause of Action is defective on the face of the FAC and judicially-noticeable materials because, 1) ScanSTAT is not subject to CMIA pursuant to the terms of the statutes therein, nor does the FAC contain facts to show that it is, consistent with this Court's prior order dismissing the first and third claims for relief (Dkt. No. 46), and even more; 2) the FAC reflects that ScanSTAT did not engage in any conduct that is violative of CMIA; and, 3) the FAC is not capable of cure, based upon facts that are affirmatively alleged in the FAC (and thus are binding judicial admissions of Plaintiff) and on the documents referenced in and made a part of the pleadings – namely, Plaintiff's admittedly signed authorizations directing delivery of her records to her legal representative.

Should Plaintiff's CMIA claim survive the pleading stage, ScanSTAT denies Plaintiff's FAC allegations as reflected in its Answer (Dkt. No. 51). Further, ScanSTAT maintains that the evidence will demonstrate that ScanSTAT is not subject to CMIA as a matter of law; assuming *arguendo* that it is applicable to Plaintiff's FAC, ScanSTAT did not violate CMIA, particularly given that it received from Plaintiff's agent her signed authorization forms for the disclosure of her medical records to her counsel of record, which is to whom the records were disclosed; because the records were not disclosed to an unauthorized third party Plaintiff cannot recover statutory damages; Plaintiff does not have any resultant compensatory damages related to the disclosure;

and, to the extent Plaintiff presents evidence of any compensatory damages, other persons and/or parties involved in soliciting and obtaining the disclosure would bear liability therefor.

ScanSTAT further contends that this case is not properly subject to class action treatment because Plaintiff cannot meet the requisite elements of Fed. R. Civ. P. 23, *inter alia*, she cannot show that she has commonality with any other persons, given the uniqueness of and broad scope of possible circumstances surrounding individuals' requests for medical records, and she cannot show that she is an adequate representative since her designated counsel of record is likely to be a witness in this case.

**3. Damages/Insurance**:

**a. Damages**:

Plaintiff requests declaratory, injunctive and equitable relief, restitution, disgorgement of profits, monetary damages and all other relief the Court deems appropriate, costs and attorneys' fees in excess of $25,000, exclusive of interest and costs. Plaintiff did not seek a specific dollar amount, but filed an unlimited civil case.

Plaintiff contends that based on Defendant's assumptions about the class size and amount of damages suffered by each class member, the amount of damages would total $2,040,200, plus attorneys' fees.

ScanSTAT denies that Plaintiff has suffered or has a right to any damages that would be recoverable from it, whether compensatory, statutory, or otherwise.

**b. Insurance**:

Plaintiff intends to acquire information regarding Defendants' insurance during the course of discovery.

ScanSTAT disclosed in its Rule 26(a) initial disclosures the requisite information regarding any agreement under which an insurance business may be liable to satisfy all or part of a possible judgment in the action or to indemnify or reimburse for payments made to satisfy the judgment. There is a reservation of rights.

///

**4. Parties, Evidence, Etc.**:

**A. Parties** (those who have appeared and those who have not):

Plaintiff Nana Akua Serwaah Oddei brings this action on behalf of herself and all others similarly situated – namely, all persons who were unlawfully overcharged for retrieval and copying of medical records.

Dismissed defendants Optum, Inc., Davita Medical Group California, P.C., and Healthcare Partners Medical Group, P.C. are represented by Morgan, Lewis & Bockius LLP, and they have appeared. The Optum Defendants were dismissed upon this Court's Order granting their Rule 12(b)(6) motion to dismiss against the FAC. (Dkt. Np. 46.) Plaintiff has filed an appeal of that order, which remains pending. (Dkt. No. 47.)

Defendant ScanSTAT has appeared and filed its Answer to the operative pleading (the FAC) on November 1, 2021 (Dkt. No. 51). It has also filed a Rule 12(c) motion for judgment on the pleadings against the remainder of the FAC (Dkt. No. 52). ScanSTAT filed its Fed. R. Civ. P. 7.1/L.R. 7-1 Notice on August 2, 2021 (Dkt. No. 33) which identified the following parties:

1. ScanSTAT Technologies, LLC
2. TP ST Acquisition, LLC
3. TP ST Holdco, LLC
4. Zurich Insurance, N.A.
5. Steadfast Insurance Company

**B. Witnesses**

Plaintiff intends to call the key Corporate Designees of ScanSTAT. Plaintiff is currently ascertaining the identities of these witnesses via discovery.

Defendant envisions at this time calling the following witnesses, as listed on its Rule 26(a) initial disclosures, subject to further discovery:

1. Nana Akua Serwaah Oddei
2. Gabriel Pimentel, Bruce Murray, and employees of Pimentel Law, P.C.;
3. Corporate Designee of ScanSTAT;

4. Third Party Witnesses from Relevant Industry, TBD;

5. Third Party Consumer Witnesses, TBD; and,

6. Optum, Inc. and/or Optum affiliates.

Defendant reserves the right to present the testimony of any and all custodians of records, and/or persons with personal knowledge of records maintenance and/or authentication of records, as needed. Defendant also reserves its right under Fed. R. Civ. P. 26(a)(2) to designate witnesses who will present evidence under Federal Rule of Evidence 702, 703, or 705 in accord with the timeline set forth in the Scheduling Order in this case. Discovery is ongoing, and Defendant reserves the right to identify further percipient witnesses, as well.

**C. Key Documents**

During the course of discovery, Plaintiff intends to discover the identities of others similarly situated – those whose medical information was wrongfully disclosed, in violation of California Civil Code § 56, et seq.

ScanSTAT envisions at this time obtaining via discovery and/or introducing the following key documents, as listed on its Rule 26(a) initial disclosures, subject to further discovery:

1. Documentation regarding Plaintiff's requests for production of her medical Records by ScanSTAT, including her authorization therefor and documents and communications submitted by her counsel in the alleged personal injury litigation, Pimentel Law, P.C.;

2. Documentation regarding ScanSTAT's receipt of Plaintiff's request for production of her medical records; and,

3. Documentation regarding ScanStat's processing of Plaintiff's request for production of her medical records, including but not limited to communications and forms relating to the process of obtaining those records.

Discovery is ongoing, and Defendant reserves the right to identify further documents, as well.

**<u>5. Discovery</u>**:

**a. Status of Discovery**:

<u>Plaintiff's Statement</u>: Plaintiff propounded Interrogatories and Requests for Production on September 7, 2021. On October 7, Defendant served responses – mostly objections and non-responses. On October 11, 2021, Plaintiff's counsel sent Defense counsel a meet and confer letter requesting an L.R. 37-1 conference. The meet and confer letter was 12 pages, covering the substantial non-responses and non-applicability of Defendant's objections. On October 25, 2021, Defendant's counsel sent Plaintiff's counsel a similarly lengthy meet and confer letter; and on November 1, ScanSTAT served "Amended Responses."

On November 4, 2021 Plaintiff's counsel sent Defense counsel a meet and confer letter regarding the Amended Responses. This time, the letter was six pages – Defendant's non-responses had decreased, but a significant number of Interrogatories and Requests required supplementing.

<u>Defendant's Statement</u>: ScanSTAT produced its Rule 26(a) Initial Disclosures on August 27, 2021. It responded to Plaintiff's September 7, 2021 Rule 33 and 34 requests, Set One, on October 7, 2021 and issued supplemental responses on November 1, 2021. It disputes that its answers are non-responsive, as Plaintiff argues in this section, and further disputes that the length of Plaintiff's letters are a measure of any validity of the issues. ScanSTAT has participated in the L.R. 37-1 proceedings in good faith and with a spirit towards compromise, despite the defects it perceives in Plaintiff's discovery requests. As of their November 15, 2021 conference, the parties agreed to request a video/telephonic meeting with Magistrate Judge Wilner pursuant to his Procedures in an effort to resolve the remaining discrete disputes. With the pleadings (FAC) now at issue, Defendant anticipates issuing its first set of written discovery requests to Plaintiff within the next two (2) weeks.

**b. Discovery Plan**:

The Parties agree that all written discovery shall be conducted in accordance with

the Federal Rules of Civil Procedure and Local Rules, and should not be phased, changed, or otherwise limited. The parties have issued their disclosures under Rule 26(a), pursuant to Dkt. No. 11 and Rule 26(a)(1)(D) respectively, and do not propose any changes to the Rule 26(a) requirements.

ScanSTAT has questioned the completeness of Plaintiff's Rule 26(a) disclosures, as they do not contain the information required by Rule 26(a)(1)(A)(i), (iii), and (iv).

The Parties agreed to and submitted a stipulated protective order to govern discovery on October 25, 2021 (Dkt. No. 48) which was entered by the court on the same day (Dkt. No. 50).

The Parties agree that, to the extent discovery is deemed appropriate, (1) each Party will bear its own cost for copying documents produced under Rule 34 and in response to any subpoena; (2) depositions will be taken in accordance with Rule 30; (3) each party shall act reasonably in attempting to informally resolve discovery issues that may arise; and (4) discovery pleading, including discovery requests, responses, and documents will be served by electronic service, which service and time to respond will be governed by Fed. R. Civ. P. Rules 5(b)(2)(F) and 6(d).

At this time, the Parties do not believe that discovery needs to be conducted in phases.

Currently, the Parties do not anticipate any issues concerning the discovery of electronically stored information ("ESI"). To the extent discoverable information is electronically stored, the Parties agree that responsive ESI will be produced in hard copy or digital form.

The Parties anticipate an exchange of written document requests, depositions within the 10-deposition per side limit provided in Fed. R. Civ. P. 30(a), interrogatories, requests for admissions, and potential non-party discovery under Fed. R. Civ. P. 45.

Plaintiff intends to continue pursuing supplemental responses to her Set One discovery. The parties are currently in the process of scheduling their next L.R. 37-1 meeting for that purpose. Plaintiff will then draft Set Two discovery requests. Plaintiff

contends that since this case is heavily data-driven, the production of documents will be key to Plaintiff's discovery.

Defendant anticipates conducting discovery on the following topics:

1. Plaintiff's initial authorization of the disclosure of medical records, including the express written statements, intentions, understandings, scope, and purpose thereof (including authentication issues);

2. Plaintiff's subsequent authorization of the disclosure of medical records, including the express written statements, intentions, understandings, scope, and purpose thereof, particularly following the initial interaction with ScanSTAT (including authentication issues);

3. The involvement, intentions, and communications of Plaintiff's counsel and/or designated representative(s) relative to the request, receipt, and use of Plaintiff's medical records, both initially and subsequent to the first interaction with ScanSTAT, and their communications relative to same (including authentication issues);

4. The ultimate use, disclosure, and/or introduction of Plaintiff's medical records in the underlying personal injury litigation;

5. Relevant industry standards governing disclosure and/or provision of duplications of medical records in the subject context, and what constitutes a "lawful" authorization for the purposes of CMIA;

6. Plaintiff's allegations of numerosity, ascertainability, commonality, typicality, and adequacy, the factual basis therefor, the relative documents, and the anticipated lack thereof;

7. Plaintiff's allegation of compensatory damages and any other damages claims, including the issue of causation and whether there is a viable class action damages model for the CMIA claim; and,

8. All allegations asserted within the FAC, the factual basis therefor, and the relative documents.

Such discovery will be conducted by way of discovery requests under Rules 33,

34, and 36, and possibly non-party discovery under Rule 45, as well as expert opinion evidence relative to, *inter alia*, industry standards. Discovery is ongoing, and Defendant reserves the right to conduct discovery on additional issues, as well.

**6. Legal Issues**:

**a. Class Action Status**:

Plaintiff contends that Plaintiff's initial complaint pleads the required elements of Cal. Code Civ. Proc. § 382 as well as FRCP 23. Namely, that the elements of Numerosity & Ascertainability, Commonality, Typicality, Adequacy, and Superiority of the Class Action are met.

Defendant denies that this action is suitable for class treatment because Plaintiff cannot satisfy class action requirements under Federal Rule of Civil Procedure 23, on grounds including but not limited to those discussed in Section 2(b) above, and due to Plaintiff's lack of standing. Also, the scope of the class, as allegedly defined (Dkt. No. 35, ¶ 31), is not capable of identification, particularly prior to any finding of liability under CMIA, which ScanSTAT denies.

**b. California Civil Code § 56.10**:

Plaintiff's counsel's office requested Plaintiff's medical information prior to litigation, and therefore her counsel was not yet a "patient's representative" for purposes of California Civil Code § 56.10, et seq. Plaintiff contends that Defendant ScanSTAT Technologies, LLC and DOES 1-20 were not authorized to disclose the requested medical records pursuant to a court order, or a subpoena or subpoena duces tecum issued by a party to a proceeding under Civil Code § 56.10 (b) (l) or (3). Plaintiff is informed and believes that all other class members were subjected to the same violations.

Plaintiffs contends that although ScanSTAT Technologies, LLC and DOES 1-20 were authorized to receive Plaintiff's and Class Members' medical information pursuant to Civil Code § 56.10 (c) (3), their disclosure of their further disclosure of that information to third parties, including Plaintiff's counsel, violated the CMIA because the medical information they received may not be "further disclosed ... in a way that

would violate" the CMIA, such as by "shar[ing], sell[ing], us[ing] for marketing, or otherwise us[ing] ... for a purpose not necessary to provide health care services to the patient." Civ. Code § 56.10 (c)-(d).

ScanSTAT asserts that key legal issues will include:

1. Whether ScanSTAT is subject to CMIA, as alleged in the FAC, at all;

2. Whether ScanSTAT engaged in any conduct that is violative of CMIA;

3. Whether Plaintiff signed the subject authorizations for the disclosure of her medical records, authentication issues, and the legal effect thereof;

4. The legal effect of Plaintiff's designation of her counsel of record as her representative and recipient of her medical records, and the legal nature of her relationship with those designated representatives;

5. The legal use of and request for Plaintiff's medical records in the underlying personal injury litigation;

6. Plaintiff's claim to statutory damages and decisional law interpreting same;

7. Plaintiff's claim of resultant damages related to the disclosure;

8. The effect of Plaintiff's notice of the involvement of ScanSTAT in her medical records order and actions following same;

9. Plaintiff's allegations of numerosity, ascertainability, commonality, typicality, and adequacy (including the procedural effect of her counsel of record's role as a likely witness);

10. Whether Plaintiff has standing under CMIA; and,

11. The effect of the pending appellate proceedings relative to this Court's dismissal order (Dkt. Nos. 46 ,47).

**c. Dismissed claims for relief subject to appeal:**

The First and Third Causes of Action in the FAC under Evid. Code § 1158 and Cal. Bus. & Prof. Code §§ 17200, et seq., respectively, were dismissed upon this Court's order. (Dkt. No. 46.) Plaintiff has filed an appeal of that order. (Dkt. No. 47.) These

appellate proceedings remain pending and ongoing in Case No. 21-56172 in the U.S. Court of Appeals for the Ninth Circuit.

**7. Motions**:

**a. Motions**:

Plaintiff's Statement:

At the parties' October 22, 2021 L.R. 37-1 meeting, Plaintiff's counsel identified numerous Interrogatories and Requests for Production that would be subject to a motion to compel if not supplemented. Plaintiff's counsel identified and summarized the various Requests and Interrogatories in a follow-up meet and confer letter (this time, three pages). The parties' counsel are still in the process of meeting and conferring to resolve these issues in lieu of a motion to compel.

Defendant's Statement:

ScanSTAT does not envision the filing of any procedural motions at this time, but reserves the right to do so as this case proceeds, including but not limited to a motion to stay the proceedings pending appeal. ScanSTAT will follow Judge Wilner's Procedures for discovery disputes as needed, including his proffered video/telephonic conference procedure, where appropriate in accord with Judge Wilner's stated guidelines.

**b. Dispositive Motions**:

Plaintiff's Statement: As of the date of this Report, there is pending Defendant's Motion for judgment on the pleadings.

Defendant's Statement: As set forth in Section 2(b), above, ScanSTAT has filed a Rule 12(c) motion for judgment on the pleadings (Dkt. No. 52) on the grounds that 1) ScanSTAT is not subject to CMIA pursuant to the terms of the statutes alleged in the FAC, nor does the FAC contain facts to show that it is, consistent with this Court's prior order dismissing the first and third claims for relief (Dkt. No. 46), and even more; 2) the FAC reflects that ScanSTAT did not engage in any conduct that is violative of CMIA; and, 3) the FAC is not capable of cure, based upon facts that are affirmatively

alleged in the FAC (and thus are binding judicial admissions of Plaintiff) and on the documents referenced in and made a part of the pleadings – namely, Plaintiff's admittedly signed authorizations directing delivery of her records to her legal representative.

Defendant may also file a Rule 56 motion for summary judgment, depending on the outcome of its motion for judgment on the pleadings, on the basis that the undisputed material facts establish that it is not subject to CMIA as alleged; that it did not violate the CMIA, particularly given that Plaintiff admits providing her signed authorizations for the medical records; that Plaintiff is barred from recovering statutory damages under applicable decisional law since her medical records were delivered to her counsel as she expressly designated in her authorizations; and Plaintiff cannot establish the causation of any actual damages for which ScanSTAT would be liable.

**c. Class Certification Motion**:

The Parties have met and conferred regarding a proposed briefing schedule for the class certification motion that will allow for at least three weeks between the filing of the reply and the hearing.

Plaintiff proposes that the Motion for Class Certification will be filed by June 30, 2022, whereas Defendant proposes that it be filed by January 31, 2022.

Plaintiff proposes that the Opposition brief will be filed on July 28, 2022, whereas Defendant proposes that the Opposition brief will be filed by February 28, 2022.

Plaintiff proposes that the Reply brief will be filed by August 10, 2022, whereas Defendant proposes that the Reply brief will be filed by March 18, 2022.

Plaintiff proposes that the hearing will be set for August 31, 2022, whereas Defendant proposes that it be set for April 8, 2022, or as soon thereafter as is convenient for the Court.

**8. Alternative Dispute Resolution (ADR)**:

**a. Prior Discussions**:

The Parties have engaged in an initial discussion about possible ADR options and

agree that settlement is premature to schedule at this time, but will continue to communicate as appropriate.

**b. ADR Selection**:

Pursuant to Local Rule 16-15.4, the Parties wish to participate in a private dispute resolution proceeding (*i.e.*, ADR Procedure No. 3).

**9. Trial**:

**a. Proposed Trial Date:**

The Parties agree that because the FAC is pleaded as a putative class action, because of the anticipated Rule 23 and Rule 56 motions, because of the number of factual and legal issues listed in Sections 5 and 6, and because of the pendency of the appellate proceedings relative to the Optum Defendants, it qualifies as a "High Level" case; and therefore the trial date should be set no earlier than 18 months from this scheduling conference. Defendant proposes a trial date of January 24, 2023, whereas Plaintiff proposes a trial date of March 27, 2023.

**b. Time Estimate**:

The Parties are unable to give the Court a precise estimate at this time, as the scope and length of trial will be dependent on the developments in the case through discovery and the Court's resolution of legal issues, including Plaintiff's Motion for Class Certification and ScanSTAT's pending Motion for Judgment on the Pleadings, and potentially its Rule 56 Motion for Summary Judgment. That said, Plaintiff offers a preliminary estimate of 10–14 days that is subject to change. Defendant's preliminary estimate is 4 court days, albeit dependent upon the outcome of the certification motion and the pending appellate proceedings.

**c. Jury or Court Trial**:

Plaintiff demands a jury trial. ScanSTAT has also demanded a jury trial.

**d. Judge**:

The Parties agree to the District Judge assigned, and have not executed mutual consents under 28 U.S.C. § 636.

**e. Trial Counsel**:

Gabriel Pimentel and Bruce Murray will try this action on behalf of Plaintiff, with Mr. Murray serving as lead counsel on behalf of Plaintiff.

Kimberly D. Howatt and Timothy A. Hanna will try this action on behalf of ScanSTAT, with Ms. Howatt serving as lead counsel and Mr. Hanna serving as second chair.

**<u>10. Special Requests/Other Issues</u>**:

**a. Independent Expert or Master**:

Plaintiff contends that since this case is data-driven, the judge may want to appoint a master.

Defendant does not foresee this action requiring the appointment of a master pursuant to Rule 53 or an independent scientific expert, and is of the position that such is not supported or warranted in this case.

**b. Manual for Complex Litigation**:

Because this case is pleaded as a putative class action, the Parties agree that the procedures set forth in the Manual for Complex Litigation should generally apply.

**c. Other Issues**:

No other issues that the Parties foresee at this time.

///

///

///

///

///

///

///

///

///

///

## CLASS CERTIFICATION PLAN

The parties hereby submit the following Class Certification Plan pursuant to the Court's December 10, 2021 Mandatory Scheduling Conference Order.

**A. Plaintiff's Section**

The dates provided for Defendant's anticipated responses to written discovery are ranges because as is often the case in litigation, the responding party is typically unable to provide all responsive information within the 30-day deadline. Further, the dates provided for anticipated depositions of Persons Most Qualified are ranges because it is not known what date Defendants will provide the information in response to discovery or what dates Defendant's PMQs will be produced for deposition. Lastly, the dates provided take into account the possibility of delays caused by Defendant's refusal to provide some or all of the information necessary to file Plaintiff's class certification motion, as is presently the case.

Plaintiff anticipates the following pre-certification motion discovery schedule, assuming the proposed briefing schedule in Section 7(c):

1. During the week beginning November 15, 2021, a second L.R. 37-1 conference regarding Plaintiff's Set One written discovery.

2. On or before November 24, 2021, a motion to compel further responses to discovery, if necessary.

3. Between January 3, 2022 and May 31, 2022: Depositions of Defendant and any witnesses or putative class members identified by Plaintiff.

4. On or before June 30, 2022, Plaintiff will be filing her Motion for Class Certification.

**B. Defendant's Section**

Defendant anticipates the following pre-certification motion discovery schedule, assuming the proposed briefing schedule in Section 7(c):

1. On or before November 24, 2021: Issuance of discovery requests to Plaintiff under Rule 33, 34, and 36, Set One;

2. On or before December 27, 2021: Due date for Plaintiff's responses to ScanSTAT's discovery requests under Rule 33, 34, and 36, Set One;

3. Between January 3, 2022 and February 14, 2022: Depositions of Plaintiff and any witnesses or putative class members identified by Plaintiff.

4. Between January 3, 2022 and February 14, 2022: Depositions of other witnesses identified on ScanSTAT's Rule 26(a) Disclosures.

5. Between January 17 and 21, 2022: Issuance of discovery requests to Plaintiff under Rule 33, 34, and 36, Set Two;

6. February 28, 2022: ScanSTAT's filing of its opposition to Plaintiff's motion for class certification.

**PIMENTEL LAW, P.C.**

Dated: November 22, 2021

By: /s/ Bruce T. Murray, Esq.
Attorney for Plaintiff

**GORDON REES SCULLY MANSUKHANI, LLP**

Dated: November 22, 2021

By: /s/ Kimberly D. Howatt
Attorney for Defendant ScanSTAT Technologies, LLC

1242030/63039944v.1

## SIGNATURE CERTIFICATION

I hereby certify that the content of this document is acceptable to Kimbery D. Howatt, counsel for Defendant ScanSTAT Technologies, LLC, and that I have obtained Ms. Howatt's authorization to affix her electronic signature to this document.

**PIMENTEL LAW, P.C.**

Dated: November 22, 2021

By: /s/ Bruce T. Murray, Esq.
Attorney for Plaintiff